Circuit Court of Appeals, Third Circuit.

Argued Oct. 13, 1947.

Decided Nov. 18, 1947.

S. Leo Ruslander, of Pittsburgh, Pa.
(Julian Ruslander and Jerome B. Lieber,
both of Pittsburgh, Pa., on the brief), for
petitioner.

Helen Goodner, of Washington, D. C.
(Sewall Key, Acting Asst. Atty. Gen., and
Helen R. Carloss, Sp. Asst. to the Atty.
Gen., on the brief), for respondent.

Before ALBERT LEE STEPHENS,
GOODRICH, and O'CONNELL, Circuit
Judges.

GOODRICH, Circuit Judge.

In asking reversal of a decision by the
Tax Court [1] the taxpayer corporation ten-
ders us six issues. Five of them present
questions of fact; one presents a question
of law. The question of law will be treated
first.

The question of law is narrow but inter-
esting. It has to do with Section 24(c)
of the Internal Revenue Code, 26 U.S.C.A
Int.Rev.Code, § 24(c), dealing with situa-
tions in which deductions are not allowed
under certain circumstances. The Section
precludes a deduction if the three condi-
tions set out in it are all met.[2] There is
no dispute that two of the provisions are
met in this instance. Our question turns up-
on the third which is whether the taxpayer
corporation "paid" its obligation for salary
for the year 1940 to its President, Anthony
Miller, within two and one half months aft-
er the end of the taxable year 1940.

On January 1, 1941 the corporation gave
negotiable promissory notes, payable on de-
mand, to President Miller. The amount

---

[1] Anthony P. Miller, 7 T.C.No.89
(1946).

[2] "Sec. 24. Items Not Deductible.

(c) Unpaid expenses and interest.—In
computing net income no deduction shall
be allowed under section 23(a), relating
to expenses incurred, or under section
23(b), relating to interest accrued—

(1) If such expenses or interest are
not paid within the taxable year or with-
in two and one half months after the
close thereof; and

(2) If, by reason of the method of

accounting of the person to whom the
payment is to be made, the amount there-
of is not, unless paid, includible in the
gross income of such person for the tax-
able year in which or with which the
taxable year of the taxpayer ends; and

(3) If, at the close of the taxable year
of the taxpayer or at any time within
two and one half months thereafter,
both the taxpayer and the person to
whom the payment is to be made are
persons between whom losses would be
disallowed under section 24(b)."

payable, upon these notes, represented the salary which the corporation owed Miller for services during the preceding year, plus other items not here important. The taxpayer corporation was, at the time of delivering the notes and at all other times here relevant, solvent and able to pay its obligations. The notes were, in fact, paid on December 31, 1942.

The question is whether, by giving these notes to Miller, the taxpayer "paid" its President's salary within the meaning of Section 24(c) (1) of the Internal Revenue Code. The Commissioner said it did not. The Tax Court, after full consideration, agreed with the Commissioner and rejected albeit respectfully, a conclusion of the Sixth Circuit to the contrary.[3] For the Commissioner it is argued that the words of the statute should receive their ordinary meaning unless circumstances show that something else was intended. Under that meaning, it is argued, "paid" means the giving of cash or its equivalent to the payee. Furthermore, the argument runs, the giving of a negotiable instrument leaves things between the parties without essential change from what they were before the instrument was given. The debtor still owes the money and the creditor has not received it. Thus the Commissioner concludes that the creditor in this case was not "paid" until the corporation discharged the notes by payment and that event, it is admitted, did not take place until 1942.

■ The point is one which can be argued either way and have the arguments make sense. We think, however, that the better argument is in favor of the view taken by the Sixth Circuit and against that taken by the Tax Court. When a debtor gives a creditor a negotiable instrument for a debt, legal relations between them are not the same as before by any means. The legal rule is well recognized that the giving and acceptance of the negotiable instrument is conditional payment of the debt and the creditor cannot proceed against the debtor on the original obligation until the instrument is either surrendered or dishonored.[4] If the parties agree, the acceptance of the negotiable paper will discharge the original debt altogether.[5]

■ In either event, the creditor with the negotiable instrument in his hands is in a much better position than a creditor without one. He has a piece of paper which he can transfer to a holder in due course free of equities. He has an instrument on which he makes out a case against the debtor simply by its presentation and proof of execution. The burden shifts to a defendant to show lack of consideration or other defense. All this is well known negotiable instruments law and we need not labor the point nor build up an appearance of erudition in this opinion with encyclopedic citations upon points which no one disputes.

Furthermore, as a matter of common parlance we think it is most common to speak of "paying" an obligation by giving one's check for it. That is the common method of paying bills in this country. The use of the demand negotiable note is not so frequent, but the two instruments have much in common, nevertheless. Each is payable at once. Each rests on the credit of the maker or drawer, respectively, for the bank is under no obligation to the

[3] Musselman Hub-Brake Co. v. Commissioner, 6 Cir., 1943, 139 F.2d 65. The Fifth Circuit has a decision relevant to the question, but the case is distinguishable from the facts here as it is admitted by the Government and was urged by the Solicitor General when certiorari was sought by an unsuccessful taxpayer following the decision in the Fifth Circuit. See P. G. Lake, Inc., v. Commissioner of Internal Revenue, 5 Cir., 1945, 148 F.2d 898, certiorari denied, 1945, 326 U.S. 732, 66 S.Ct. 41, 90 L.Ed. 436.

[4] Cf. Knapp v. Gray, 1922, 153 Ark. 160, 239 S.W. 757; Carney v. Mortgage Security Corporation of America, 1929, 107 W.Va. 605, 149 S.E. 837.

[5] Gaunt v. Alabama Bound Oil & Gas Co., 8 Cir., 1922, 281 F. 653, 23 A.L.R. 1279; Stebbins v. North Adams Trust Co., 1922, 243 Mass. 69, 136 N.E. 880; Brady v. Interstate Mortgage Co., 1924, 96 Okl. 293, 223 P. 145; Woods Bros. Corporation v. Francke, 1932, 122 Neb. 672, 241 N.W. 88.

holder to pay a check. Nor is the drawing of the check an assignment of the debtor's account with the bank.

We think, therefore, that the taxpayer corporation paid its president's salary when, on January 1, 1941, it gave him negotiable demand promissory notes for the amount. Nor does this conclusion violate the spirit of the Act as found in its legislative history. Our brethren in the Sixth Circuit decision, already referred to, discussed this point in some detail and reference is made to the opinion in that case for its consideration.

We now turn to the five issues of fact posed by the taxpayer. They are as follows: (1) Was the Tax Court correct in fixing $25,000 as the allowable deduction for the president's salary in 1940 instead of the $42,000 which the corporation (self dominated by its President Miller) had given him? (2) Was the value of shares of stock in the Chelsea Housing Corporation, received by the corporation in 1940, that which the Commissioner fixed and the Tax Court affirmed? (3) Did the taxpayer prove that the stock of the Chelsea corporation became worthless in 1940? (4) What was the value of shares of the Ogontz Housing Corporation received by the taxpayer in 1940? (5) What was the value of Foster Park Housing Corporation shares received by the taxpayer in 1940?

Upon some of these issues the Tax Court affirmed the figures set by the Commissioner. Upon one it reached a different conclusion and fixed a lower amount. The taxpayer disagrees with each of them on every issue. He recognizes, although not enthusiastically, the existence of the doctrine of the Dobson case, but says, nevertheless, that the conclusion of the Tax Court finds no reasonable basis in fact. Therefore, he says, Dobson or no Dobson the Tax Court must be reversed.

On none of these issues can we accept the taxpayer's argument. The opinion of the Tax Court shows an examination of each one of these factual questions with admirable clearness and exactness. The evidence pro and con is carefully reviewed. There is certainly adequate basis in the evidence for each one of the conclusions reached, although we can quite understand how a hard pressed taxpayer is unhappy about each of them. We think here that our judicial eye in its restricted wandering, and it is very restricted wandering, has encountered abundantly sufficient facts to lend support to the Tax Court's conclusions.

Our decision is, then, that the Tax Court is reversed so far as it concerns the deduction to the taxpayer for the salary. That salary is to be allowed as a deduction but only as to the $25,000 which the Tax Court found was the reasonable amount. On all other points the decision of the Tax Court is affirmed.