THE AKRON WELDING AND SPRING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10474. Promulgated April 29, 1948.

*Alvin C. Vinopal, Esq.*, for the petitioner.
*Clarence E. Price, Esq.*, for the respondent.

### OPINION.

VAN FOSSAN, *Judge*: The single issue before us is whether or not the petitioner is entitled to deductions for rent and salaries due to its principal stockholders, George I. Stuver and George W. Stuver, and duly accrued on its books during the taxable year, as provided by section 23 (a), Internal Revenue Code,[1] modified by section 24 (c).[2]

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

(a) EXPENSES.—

(1) IN GENERAL.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade. or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered ; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business ; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

[2] SEC. 24. ITEMS NOT DEDUCTIBLE.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) UNPAID EXPENSES AND INTEREST.—In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued—

(1) If such expenses or interest are not paid within the taxable year or within two and one-half months after the close thereof ; and

(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends ; and

(3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b).

Respondent disallowed the items as deductions under the provisions of section 23 (c) of the code. It is well established that all three conditions set forth in section 24 (c) must co-exist in order to make that section operative. *Michael Flynn Mfg. Co.*, 3 T. C. 932; *Fincher Motors, Inc.*, 43 B. T. A. 673. It is conceded that the third condition exists in the case at bar.

The petitioner contends that all payments in controversy were either constructively or actually made; constructively, because they all were unrestrictedly subject to the officers' command and the petitioner was amply able to pay them and, actually, because the amounts due for unpaid salaries were paid by the petitioner's notes duly issued to the officers during the taxable year. It is stipulated that all the items were accrued on the books of the petitioner, which kept such books on an accrual basis.

The respondent challenges the factual contentions of the petitioner and also maintains that it never was the real intention of the petitioner to make actual payments of the liabilities as accrued.

We first consider the two items of $2,500 and $1,295.78, allegedly due to George I. Stuver and George W. Stuver, respectively, for unpaid salaries and covered by the petitioner's notes. Under circumstances essentially similar to those present here, in *Musselman Hub-Brake Co.* v. *Commissioner*, 139 Fed. (2d) 65, the Circuit Court of Appeals for the Sixth Circuit held that whenever a corporation, on an accrual basis, gives to its controlling stockholders demand notes having a cash par value for patent rights and interest, and credits such sums on its books to its stockholding officers, who report the notes on their returns made on a cash basis, such sums are deductible in computing the income of the corporation, on the ground that they had been paid within the meaning of section 24 (c).

On the record as we find it, no question is raised as to the reasonableness of the salaries paid to the petitioner's officers, no doubt is cast upon the issuance or delivery of the notes and the circumstances surrounding that transaction, and no serious contention is made that the notes were not worth their face value on December 29, 1941. The critical question is that of payment. If the notes were given and received as payment, they constituted payment under the law. The resolution of December 26, 1941, states specifically that the portions of the salaries due to the petitioner's officers be "paid" in cash and "discountable note(s) of the corporation payable on demand." Although there was no categorical evidence that the notes were received as payment, the terms of the resolution and the collateral treatment of the same convince us that the notes were given and received in payment of the petitioner's obligations. They were so treated on its books. Hence, payment was made within the time specified in section 24 (c) (1) and the first condition for disallowance was not fulfilled.

There can be no question of the ability of petitioner to pay the two items, nor is there any doubt that the cash was available to the officers on demand.

We see no evidence of a purpose or intention to evade taxes on the part of the petitioner or its officers. We note also that during 1942 (but not within the statutory time limit) the notes were paid by the petitioner. If there were any question of the same, this fact is persuasive that the notes were worth their face value at the time of execution.

In view of our conclusion that the issuance of the notes constituted payment to the officers, it is obvious that they should have reported in their income tax returns for 1941 (as they did) the amounts represented by the notes and should have paid the tax thereon, thus rendering them "includible" in the individual returns, as required under the statute in order to make section 24 (c) (2) inapplicable to the petitioner's disbursements. Consequently, neither of the conditions for disallowance imposed by subsection (1) or subsection (2) of section 24 (c) existed and the face value of the notes is deductible as provided by section 23 (a) (1).

The respondent on brief cites and relies strongly on *Anthony P. Miller, Inc.*, 7 T. C. 729. After the briefs were filed in the instant case, however, our decision in the *Miller* case was reversed by the Third Circuit Court of Appeals in *Anthony P. Miller, Inc.* v. *Commissioner*, 164 Fed. (2d) 268, the Circuit Court holding that the notes given in that case constituted payment of the salary of the taxpayer's president. Our decision in the *Miller* case will no longer be followed.

The facts relating to the item of $5,646.87 credited to the open account of George I. Stuver on the petitioner's books under the heading "Rents Payable and Accrued, George I. Stuver" present a far different situation. They show clearly that neither the petitioner nor George I. Stuver ever intended that the delinquent rent account should be paid in cash or its equivalent. No note was given to cover the amount due. In answer to the question "You stated that your loans were intended to be capital contributions by you?" George I. Stuver replied, "I intended to increase the business. Well, yes. I intended to increase the business. I felt it was my pet baby, and that is why I was hanging onto it." In the cross-examination of George I. Stuver appears the following:

Q. At the end of 1941 how many notes of the Petitioner did you hold? In what amount?

A. I would have to look at the books. I couldn't tell that. You mean for—

Q. There were others besides the salary in question here; is that correct?

A. Yes; money I loaned a good many years before that.

Q. And this was all taken care of in 1942, approximately, by the issuance of stock?

A. If that is when the stock was issued, it was; yes, sir. I am not so sure about the date on that. I don't know about that exactly. I know I got the stock.

It is thus apparent that the various obligations of the petitioner to its chief stockholder, including the unpaid rent for 1941, were intended to be capitalized when the money which they represented was contributed by George I. Stuver. The issuance of the new stock to him in 1942 confirms such intention, as explained by Stuver.

Certainly we can not conclude that the book entry of the item as "rent payable" evidences constructive payment when we are convinced that George I. Stuver intended, and subsequently agreed, to increase his capital investment in the petitioner in the amount of the unpaid rent for his building accumulated during 1941 and of the other aggregate obligations which the petitioner owed him.

The subsequent issuance of the petitioner's stock to cover the prior loans of long standing, as well as the rent item in controversy, manifestly shows that such items of indebtedness were and were intended to be capital contributions of the petitioner's principal stockholder and were so considered and treated by him and the petitioner. Hence, they are not deductible as expenses under the provisions of section 23 (a) (1).

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

HILL, *J.*, dissenting: I disagree with the majority herein in respect of its holding that notes given on account of salary constituted payment of the salary. In my opinion, such holding is contrary to, and nullifies, the provisions of section 24 (c) of the code.

The effect of the majority holding is that a debt can be paid by a promise in writing to pay it. To my mind, such holding is repugnant to the inherent meaning of "paid." To say that a debt can be paid by a promise to pay it carries its own refutation and is pure sophistry. No amount of sophistry even in the guise of reasoning can demonstrate a thing to be a fact which inherently is not a fact, either in the concept of the law or of common understanding.

I deem it not only safe, but imperative, to credit Congress with meaning what the language of its enactments unequivocally and unambiguously provide. When it used the word "paid" in section 24 (c), it meant just that and did not mean that the requirement of payment is satisfied with a promise to pay.

The identical question we have here was involved in the case of *Anthony P. Miller, Inc.*, 7 T. C. 729. We held in that case contrary to the holding in the instant case. I adhere to and adopt the reasoning for our holding in that case in support of my dissenting views here.

MURDOCK, ARNOLD, DISNEY, and LEMIRE, *JJ.*, agree with this dissent.

DISNEY, *J.*, dissenting: I am impelled to dissent from the majority opinion. I find nothing in the facts to justify the conclusion that the notes involved were given in payment of the antecedent debts. The general rule on the point is stated in 48 C. J. 610, as follows:

The rule obtaining in most jurisdictions is that, in the absence of agreement or consent to receive it as such, a draft or bill of exchange, although accepted by the drawee, or a promissory note of the debtor, or his acceptance of a draft or bill of exchange drawn upon him, does not in itself constitute payment or amount to a discharge of the debt * * *.

The above statement is supported by several columns of citations, including some from Ohio, the state of the situs of the matter here involved. In *A. Leschen & Sons Rope Co.* v. *Mayflower Gold Mining & Reduction Co.*, 173 Fed. 855, it was said, by the Circuit Court of Appeals for the Eighth Circuit, in the headnote:

An agreement that a debt shall be paid, or that it has been paid, by the note of the debtor, is a contract for an extension of time, and that the debt shall be paid, or has been paid, by the note on condition that the note is paid.

In the body of the opinion, the court said, citing many cases, including several in the Supreme Court and the Federal courts:

The acceptance by a creditor of the promissory note of his debtor for his antecedent debt does not extinguish it, unless the note is paid. It is not an absolute, but a conditional, payment of the debt. * * *

The court continued:

A clear agreement by the creditor that he will take the risk of the payment of the note and that the debt is discharged thereby, or the indubitable intention of both the parties to that effect, is requisite to extinguish a debt by the taking of the debtor's note.

Then, referring to the fact in that case that the contract provided that $4,200 "should be paid by the note of the mining company," it was said:

* * * The ordinary meaning of that term was that the debt should be paid by the note on condition that the note was paid, but should not be extinguished otherwise, and the common and customary meaning of an expression is to be preferred to an unusual and ingenious interpretation of it. * * *

An Ohio case on the point is *Nunn* v. *Hubacher*, 158 N. E. 9. Therein an heir accepted a note from her brother for the amount due her out of the estate, and it was held that by such acceptance she was not bound, "in absence of special stipulation and agreement that acceptance of note was in payment of face thereof."

In the light of what I consider well settled law, nothing appears in the facts in this case to indicate such definite agreement as is requisite to make payment out of mere acceptance, by the acceptance of a note. I, therefore, respectfully dissent.

MURDOCK, ARNOLD, and LE MIRE, *JJ.*, agree with this dissent.