Mundet Cork Corporation v. Commissioner.
Mundet Cork Corp. v. Commissioner
Docket No. 15845.
United States Tax Court
1948 Tax Ct. Memo LEXIS 143; 7 T.C.M. (CCH) 411; T.C.M. (RIA) 48119; June 30, 1948
Edward S. Hand, Esq., for the petitioner. Whitfield J. Collins, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves income, declared value excess profits tax and excess profits tax liability, for the calendar years 1940 and 1941, as follows: Declared Value
Year
Income Tax
Excess-Profits Tax
Excess-Profits Tax
1940
$2,241.60
$660.00
$ 2,484.44
1941
3,384.37
17,020.63 The question involved is whether, within the meaning of section 24 (c) of the Internal Revenue Code, the Commissioner erred in disallowing deductions taken for compensation paid to its president; which turn upon the question as to whether the giving of notes for such compensation, within 2 1/2 months after the end of the respective taxable years, constituted payment within the meaning of section 24 (c) (1). A stipulation of facts was filed and is adopted. The facts therein set forth, so far as regarded material to examination of the *145 issue, are set forth, with other evidence adduced in our Findings of Fact 1. Petitioner is a corporation organized and existing under the laws of the State of New York. Its principal business is the manufacture and sale of cork products. It filed income and declared value excess profits tax returns and excess profits tax returns for the calendar years 1940 and 1941 with the collector of internal revenue for the first district of New York. 2. In each of petitioner's taxable years, 1940 and 1941, and within 2 1/2 months thereafter, Joseph J. Mundet, Jr. was the president of petitioner and a director, and he owned more than 50 per cent in value of the outstanding stock of petitioner. Petitioner kept its accounts and reported its income on the accrual basis during each of its taxable years 1940 and 1941. 3. The directors of petitioner, at an informal meeting held in December, 1940, determined that additional compensation for 1940 would be paid to petitioner's officers, including its president. The directors of petitioner at an informal meeting held subsequent to January 1, 1941, but prior to March 15, 1941, authorized the payment to petitioner's president of additional compensation *146 for the calendar year 1940 in the amount of $10,000. 4. On or about March 1, 1941, but prior to March 15, 1941, petitioner issued to its president its negotiable promissory note for $10,000 for the $10,000 additional 1940 compensation referred to in the preceding paragraph. The promissory note for $10,000 was dated December 31, 1940, and was due June 30, 1942, with interest at 5 per cent per annum. The note was held by petitioner's president and was paid by petitioner in June, 1942, with accrued interest at 5 per cent in the amount of $750. 5. Subsequent to January 1, 1941, the amount of the additional compensation for 1940 authorized to be paid to petitioner's president was recorded on petitioner's books of account for the calendar year 1940 and credited to an account labeled "Accrued Salaries and Bonuses." 6. Petitioner's president accepted the $10,000 note in payment of the additional compensation voted him and reported the face amount thereof, on a cash basis, in his 1940 Federal income tax return. 7. The petitioner was, at December 1, 1940, and on March 1, 1941, in good financial condition. On December 31, 1940, it had $157,641.51 cash on deposit in banks and on hand. *147 It could have borrowed from banks ample money to pay the additional compensation voted its president, and he could have discounted the note for face value, plus interest, less discount, and could have received more than face value. The note was worth face value. 8. Subsequent to January 1, 1942, but prior to March 15, 1942, the amount of the additional compensation for 1941 authorized to be paid to petitioner's president pursuant to an "Incentive Plan" adopted April 25, 1941, was fixed at $27,937.96. 9. Subsequent to January 1, 1942, the amount of the additional compensation for 1941 authorized to be paid to petitioner's president was recorded on petitioner's books of account for the calendar year 1941. A note for $22,937.96 was credited to an account labeled "Notes Payable to Stockholders" and the note for $5,000 was credited to an account labeled "Accrued Salaries and Bonuses." 10. On or about March 12, 1942, but prior to March 15, 1942, petitioner issued to its president for the $27,937.96 additional 1941 compensation referred to above, its negotiable promissory note for $5,000 dated December 31, 1941, payable on demand without interest, and its negotiable promissory note *148 for $22,937.96 dated December 31, 1941, due January 1, 1943, with interest at 5 per cent per annum. Petitioner's president accepted the two notes in payment of the additional compensation. Both notes were held by him until paid, the $5,000 note being paid in May, 1942, and the $22,937.96 note being paid in January, 1943, with accrued interest at 5 per cent. 11. Petitioner's president reported the face amounts of the two notes, on the cash basis, in his Federal income tax return for 1941. 12. At December 31, 1941, and at the time of issuance of the two notes, about March 12, 1942, the petitioner was in good financial condition. On December 31, 1941, it had $5,365.73 on hand and on deposit in domestic banks and $31,755.80 on deposit in Portugal. It could have borrowed ample funds with which to pay the additional compensation to its president, and he could have discounted the $5,000 note for its face value less discount, and the $22,937.96 note for face value plus interest less discount and could have received more than the face value of the note for $22,937.96. The notes were worth face value. 13. As respondent concedes, $27,937.96 was a reasonable amount for the additional services *149 of petitioner's president for 1941. Opinion The problem here presented is whether petitioner's president was "paid" the additional compensation voted him, within 2 1/2 months after the close of the respective taxable years, within the meaning of section 24 (c) (1) of the Internal Revenue Code[1] as to disallowance of deduction of expenses. [2] No question arises as to reasonableness of compensation. *150 After the recent opinion of this Court in The Akron Welding and Spring Company, 10 T.C. 715 (promulgated April 29, 1948), we can not doubt that there was payment of the additional compensation to petitioner's president, within section 24 (c) (1) of the Internal Revenue Code. We there cited Musselman Hub-Brake Co. v. Commissioner, 139 Fed. (2d) 65, and the reversal of this Court in Anthony P. Miller, Inc. v. Commissioner, 164 Fed. (2d) 268, and held that notes given constituted payment within the statute and that we would no longer follow our decision in Anthony P. Miller, Inc., 7 T.C. 729. The respondent, however, suggests that there is a different situation here in that two of the notes here involved were not demand notes, but payable after 18 and 24 months, respectively. In our view, no real distinction is presented. The Musselman Hub-Brake case is not based upon the fact that the notes were payable on demand, but upon the fact that they had cash value equal to the deduction claimed. Though the Miller case does refer to the demand feature, clearly the conclusion is based not thereon but upon the fact of receipt *151 of a "negotiable instrument" - not distinguishing between those payable in time or on demand - which had the necessary value. The opinion specifically adopts the view of the Circuit Court in the Musselman Hub-Brake case and refers to the discussion therein. We may not, therefore, soundly find a distinction here in the fact of two negotiable instruments which are not payable on demand. In Celina Manufacturing Co. v. Commissioner, 142 Fed. (2d) 449, to the same effect as the Miller and Musselman Hub-Brake cases, the opinion in this Court indicates merely "promissory notes" as given. This indicates that the Circuit Court regarded it as immaterial whether they were demand or time notes. The respondent also suggests that section 24 (c) (2) applies because there was not actual or constructive receipt by the petitioner's president during the respective taxable year involved. However, in order to bar the deduction all three elements provided by section 24 must be found; Michael Flynn Mfg. Co., 3 T.C. 932., The Akron Welding and Spring Co., supra. Therefore, application of section 24 (c) (2) does not help the respondent. Nor does the fact that the credits, *152 by the petitioner on an accrual basis, to the president for additional compensation were not made until after the close of the year. Wolf Manufacturing Co., 10 B.T.A. 1161; Orono Pulp & Paper Co. v. United States, 34 Fed. (2d) 714. We conclude and hold that the petitioner is entitled to deduct the compensation paid by note, as to each taxable year. Decision will be entered under Rule 50. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. * * *
(c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23(a), relating to expenses incurred, or under section 23(b), relating to interest accrued - (1) If such expenses or interest are not paid within the taxable year or within two and one half months after the close thereof; and (2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) If, at the close of the taxable year of the taxpayer or at any time within two and one half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24(b)↩. 2. The respondent on brief, by way of distinguishing the Miller and Akron Welding cases, infra, contends that the obligations for the additional compensation, for each year involved, were not incurred during the year. The deficiency letter raises only the question of non-payment within 2 1/2 months after close of the year under section 24↩ of the Code. Neither petition nor answer raises any issue as to obligation incurred in the year, and in the opening statement respondent's counsel stated: "we are merely taking the position that the issuance of these notes after the close of the taxable year of the taxpayer did not constitute payment of the additional compensation which had been authorized to be paid to petitioner's president." No amendment to raise the issue was requested or made. No such issue, of time of incurrence of obligation, should be considered here, and it is not considered.