## INTERNATIONAL BEDAUX CO., Inc. v. COMMISSIONER OF INTERNAL REVENUE.

No. 191, Docket 22388.

United States Court of Appeals Second Circuit.

Argued April 7, 1953.

Decided June 4, 1953.

George Link, Jr., New York City (Charles H. Buckley, New York City, on the brief), for petitioner.

James Q. Riordan, New York City (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack and L. W. Post, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Presented by this petition for review is a narrow issue arising out of interesting and peculiar circumstances not likely to be often, if ever, repeated. The question is whether petitioner, a personal holding company, succeeded in making distribution of its income in 1942 so as to avoid the heavy surtax assessed under I.R.C. § 500, 26 U.S.C. § 500. Petitioner was then owned by Mr. and Mrs. Charles E. Bedaux, the husband owning 10 per cent, the wife 90 per cent, of its capital stock. Mr. and Mrs. Bedaux were in Occupied France

in 1942 and prior thereto, and were unable to communicate regularly with petitioner's management. They were, however, able to send two cablegrams to the company, one in December, 1941, appointing Mrs. Isabella Cameron Waite sole representative of the company, "with full discretionary powers and without limit of time," and the other January 10, 1942, confirming that "Charles Bedaux gives to Mrs. Isabella Waite powers for management of personal interests." A copy of the first cablegram was also sent in a letter to Mrs. Waite of December 23, 1941, which, after referring to the cable "making you sole representative" of the company, said: "Now you have a real job on your hands. But you are silly to think that you are not equal to it. I know you will fight for International with tooth and nails." And a later paragraph said: "Congratulations. Fix your own salary." These documents and others referred to below are recited in the Tax Court's opinion, 17 T.C. 612. Pursuant to these instructions Mrs. Waite assumed the responsibility for the management of the business in 1942 and so continued after 1942. She had been an employee of the petitioner for more than ten years and was its secretary and treasurer and largely in charge of its business affairs. During the year there was no meeting of the board of directors, which consisted only of Mr. and Mrs. Bedaux.

At this time the bank accounts of petitioner and of Bedaux were blocked by the Treasury Department. On December 30, 1942, petitioner made an application, signed by Mrs. Waite as its secretary, to the Treasury Department for a license to pay dividends from its blocked account. The application recited that the corporation's estimated net income for the year was $39,243.80; that unless this was paid out in dividends, the corporation would be heavily penalized by surtaxes which, together with normal taxes, would about equal the corporation's net income; that it desired to pay a dividend of $39,200 to its two stockholders, of which $35,280 was payable to Mrs. Bedaux, and $3,920 to Mr. Bedaux; and that it now had a cash balance of $39,952.87 from which to pay

the dividends and that various sums would be paid to it early in 1943 from royalties from its affiliated companies. Accordingly it requested a license to pay to the Chase National Bank $3,920 for the credit of Mr. Bedaux's blocked account and the sum of $35,280 to a blocked account of Isabella C. Waite and George Link, Jr., as attorneys in fact for Mrs. Bedaux. The Treasury Department issued such a license on December 31, 1942—received by Mrs. Waite between 3 and 4 p. m. on that day —good for 30 days and permitting the payments just as specified in the application.

Thereafter on this same day, December 31, 1942, Mrs. Waite took the following steps to carry out the program she had indicated in her application for the petitioner. She recorded on petitioner's books as a liability the amount of $39,200, making journal entries to show a transfer from Surplus to Dividends Payable, with a "dividend for $3.92 per share on 10,000 shares by consent of stockholders," and then transfers from Dividends Payable to Mrs. Bedaux of $35,280 "to credit Mrs. Bedaux's account with $3.92 per share on 9,000 shares" and a like entry for Mr. Bedaux of $3,920 or $3.92 per share on 1,000 shares. Appropriate entries were made in the general ledger accounts of petitioner in order to record these journal entries. Mrs. Waite then drew and mailed two checks of petitioner payable to the order of the Chase National Bank dated December 31, 1942, for deposit with that Bank. The first check in the amount of $25,560 was deposited in the Waite-Link account for Mrs. Bedaux. The second for $2,840 was deposited to Mr. Bedaux's account. Both checks were credited to these accounts on January 2, 1943. Entries reflecting the amount of these checks were made in petitioner's books on December 31, 1942. The balance of the dividends in the amount of $10,800 was deposited to these two accounts during January, 1943.

On the witness stand at the hearing below, Mrs. Waite said she made the book entries on December 31, 1942, and "mailed the two checks drawn for as much as we could possibly draw out of the account at the time, leaving a balance of around

$2500 in the bank"; later she said that the checks were "in equal proportions to the stock ownership, for as much as we could pay out without leaving International without any funds whatsoever." She was not asked, and did not explain, whether there was a discrepancy between this and her statement in the application for the license that "the corporation has a cash balance of $39,952.87 from which to pay said dividends"; the petitioner now suggests that it had a large reserve of liquid securities, but the point is not specifically covered in the record.

Petitioner's ledger account for Mr. Bedaux, offered as an exhibit below, showed a balance on January 1, 1942, of $14,326.28, with seven debits and one credit during the year, including the one debit and one credit on December 31 to record the dividend transaction. The account on December 31 showed a credit balance of $6,398.48.

The ledger account for Mrs. Bedaux was also introduced as an exhibit; its first entry is the $35,280 credit for dividends made on December 31, 1942. The account then shows the dividend check for $25,560, making the year-end balance $9,720; this amount was charged to the account on January 31, 1943, when it was deposited to Mrs. Bedaux's blocked account in the Chase National Bank. Later all these payments were ratified and approved by both Mr. and Mrs. Bedaux, who paid income taxes on the dividends so received in their 1942 income taxes. In petitioner's personal holding company return it showed subchapter A net income, I.R.C. § 504, 26 U.S. C. § 504, of $38,771.51, with a dividends paid credit of $39,200, which resulted in a showing of no "undistributed subchapter A net income." Respondent, however, made a deficiency determination of $30,-753.69, allowing no dividends paid credit whatsoever. On petition to the Tax Court, Judge Black allowed the amount covered by the two checks of December 31, 1942, totaling $28,400 as dividends, and disallowed the remainder, viz., $10,800. 17 T.C. 612. The Commissioner has acquiesced in the decision so far as concerns the dividends allowed, 1952–1 Cum. Bull. 2; this petition for review therefore raises question only as to the disallowed amount and the resulting deficiency determination of $6,613.69.

It appears to be clear that no formal declaration of dividends was needed under the circumstances; and any showing of payment of the dividends, actual or "constructive," would be sufficient to allow the credit of dividends paid as provided, in I.R.C. § 27(a) (1), 26 U.S.C. § 27(a) (1), to the basic surtax credit of § 27(b) (1) to arrive at the undistributed subchapter A net income of § 504 taxable at the rates stated in § 500. See, e. g., Regensburg v. C. I. R., 2 Cir., 144 F.2d 41, certiorari denied 323 U.S. 783, 65 S.Ct. 272, 89 L.Ed. 625; Chattanooga Sav. Bank v. Brewer, 6 Cir., 17 F.2d 79, certiorari denied 274 U.S. 751, 47 S.Ct. 764, 71 L.Ed. 1332; Fitch v. Helvering, 8 Cir., 70 F.2d 583. This is recognized in Treas. Reg. 111, § 29.27 (b)–2, which provides in part as follows:

"If a corporation, instead of paying the dividend directly to the shareholder, credits the account of the shareholder on the books of the corporation with the amount of the dividend, the allowance for a dividend paid will not be permitted unless it be shown to the satisfaction of the Commissioner that such crediting constituted payment of the dividend to the shareholder within the taxable year."

Respondent originally took the position that no showing of a credit constituting payment was made as to any of the dividends; but this position was rejected by the Tax Court. It now seems to be accepted, therefore, that the crediting made on the petitioner's books here by the company official having full power to do so was fully adequate when followed by her drawing and mailing of checks, even though they were not cashed, as they could not have been, during the year. The court, however, held the entries insufficient where a transfer of the funds was not made until January, 1943. The court made no finding as to whether these entries were intended to constitute payment in the sense that they were a definite irrevocable credit to the persons to whom they were credited.

But under the circumstances we think the petitioner was entitled to such a ruling. In her protest under oath for the petitioner against the deficiency assessment, Mrs. Waite asserted that the crediting of these dividends to Mr. and Mrs. Bedaux on the company's books was "in accordance with a long standing arrangement due to the fact that Mr. and Mrs. Bedaux were often outside the United States and the corporation, for the purpose of convenience and expedition, would pay the items for and on behalf" of them; further that at the beginning of 1941, it was indebted to Mr. Bedaux for moneys loaned and it was the corporation's common practice to treat the items credited as paid. The ledger accounts referred to above appear to bear out this statement. It has been ruled that a dividend becomes income to a stockholder when credited to his account on the books of the corporation, when the stockholder had the right to draw on the account at his pleasure. Baker v. United States, 17 F.Supp. 976, 84 Ct.Cl. 428. Respondent agrees, but appears to stress the blocked nature of the bank accounts of petitioner and its stockholders, and cites a ruling, I.T. 3415, 1940–2 Cum. Bull. 88, as saying that a transfer to a separate bank account is then necessary. But we cannot see that such a step is more than evidential as to the nature of the acts taken by and for the corporation. If the corporation cannot retreat from the action taken, it would seem that the Baker ruling is fully applicable.

Here we cannot see how the extra step of drawing and mailing dividend checks to be later deposited—viewed as decisive below and now apparently accepted as such by the respondent—can be taken to be so necessary and so effective. If after the corporation, acting through Mrs. Waite, had taken the actions to carry out the declared plan of paying the dividends she could then revoke it in the one instance, we do not see why she could not in the other. She had as much legal power in one case as the other and her acts were all of a piece, intended to the same end and not fully duplicated for the mere extraneous reason that she feared to draw

the bank balance in the Chase National Bank so low. It is true that the further step here so stressed might be important in certain situations to show the definite execution of an intent otherwise inchoate. It is true, also, that such power as Mrs. Waite wielded, if duplicated in the usual case of corporations with stockholders freely available, might raise serious question as to the decisive nature of the steps taken. Of course a corporate taxpayer should not have a period of some months of grace before making its actions sufficiently decisive to indicate in what year they give rise to particular tax consequences. But all these fears seem remote from the present case. Here a world situation made the grant of power to this individual both natural and understandable; and she was trying to exercise it wisely and desirably for her principals. Had she had somewhat more legal finesse and sophistication she might in all likelihood have avoided the problem by somewhat greater formality, even perhaps a "consent dividend" under I.R.C. § 28, 26 U.S.C. § 28, by formal written consent of the stockholders (by their agent, of course). But the intent here seems so plain and, in fact, so unquestioned that we do not think further formalities add pertinence to the legal situation. It seems to us that the dividends were made unequivocably available to the stockholders so far as the corporation was concerned and that the entire purpose subserved by this undistributed profits tax had been subserved. While, of course, the Government is not estopped by the payment of income taxes on these dividends by the stockholders, yet, since that shows that "there is no failure of tax (cf. Brooks v. Commissioner [4 Cir.], 35 F.2d 178), the purpose of the statute has been served and there is every reason to give the corporation the credit for a dividend paid." Valley Lumber Co. of Lodi v. C. I. R., 43 B.T.A. 423, 425. See also R. H. Bouligny, Inc., v. C. I. R., 45 B.T.A. 456, 459. Consequently the dividend credit should have been allowed, and the deficiency assessed on its disallowance should be expunged.

Reversed.