**SACHS**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**SLAYMAKER LOCK CO.**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**Nos. 11056, 11113.**

United States Court of Appeals
Third Circuit.

Argued Oct. 6, 1953.

Decided Nov. 17, 1953.

Herman H. Krekstein, Philadelphia, Pa. (Manuel Kraus, Harrisburg, Pa., Gerald Krekstein, Philadelphia, Pa., on the brief), for petitioner in No. 11056.

Richard S. Doyle, Washington, D. C. (Jules G. Korner, III, Washington, D. C., Eugene C. Fish, Philadelphia, Pa., Blair, Korner, Doyle & Appel, Washington, D. C., on the brief), for petitioner in No. 11113.

Harry Marselli, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Louise Foster, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before BIGGS, Chief Judge, and Mc-LAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

These cases were heard separately but present identical questions of law and will be disposed of in one opinion. The facts were not disputed and may be stated very briefly.

Before the close of the taxable year, each taxpayer delivered its negotiable demand note made payable at a bank to the trustee of its exempt employees' pension trust. Although the full amount of each note was paid in cash with interest before the end of the calendar year following the taxable years involved, the amounts now in dispute were not paid in cash until more than sixty days after the close of those taxable years. Both were accrual-basis taxpayers, and both attempted to deduct from gross income the face amount of the notes, under Section 23(p) (1) (E) of the Internal Revenue Code.[1] The Tax Court sustained the Commissioner's disallowance of the claimed deductions, holding that timely delivery of a negotiable demand note does not constitute "payment" within the meaning of Section 23(p) (1) (E) of the Code.[2] Thus is the sole question framed: Does a solvent, accrual-basis taxpayer "pay" a contribution to an ex-empt employees' pension trust by making timely delivery to the trustee of its negotiable demand note, which note is worth its face value and is later paid in cash?

The record in each case shows that the pension-trust board contemplated some difficulty in investing the contribution in favorable securities, such as first mortgage notes, and that, until that could be arranged, it was decided that the amount of the contribution would be loaned to the taxpayer at 3 and 4 per cent interest in the Slaymaker[3] and Sachs cases, respectively. In order to avoid the circuitous transaction of the taxpayer paying cash to the trust and the latter lending it back to the taxpayer and taking its note, the transaction was telescoped into one step: Each taxpayer delivered its demand note to the trust.

In neither case did the Tax Court make findings as to the solvency of the taxpayers or the value of the notes when delivered. In the Slaymaker case, however, it appears to be undisputed that the taxpayer was solvent at the time of delivery of the note and at all pertinent times thereafter and that the note was worth its face value at the time of delivery. Indeed, there was positive and uncontroverted evidence to that effect on both points. Such evidence is lacking in the Sachs case. For the moment, how-

---

1. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

\* \* \* \* \*

"(p) Contributions of an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan.

"(1) General rule. If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent:

\* \* \* \* \*

"(E) For the purposes of subparagraphs (A), (B), and (C), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual." 26 U.S.C. § 23 (p) (1) (E).

2. The Tax Court's opinion in the Slaymaker case, 1952, appears at 18 T.C. 1001. The Sachs case is not officially reported but may be found in 5 C.C.H. 1952 Fed.Tax Rep. ¶7657 (M) (1952).

3. The face of the Slaymaker note did not provide for interest, but it was agreed that interest would be, and it was, in fact, paid, in cash at 3 per cent.

ever, we will pass over that factual difference between the two cases.

As to the law, there are no four-square cases in the courts of appeals, but there are some rather persuasive analogies.

In Anthony P. Miller, Inc. v. Commissioner of Internal Revenue, 3 Cir., 1947, 164 F.2d 268, certiorari denied, 1948, 333 U.S. 861, we held that the taxpayer had "paid" its president's salary by delivery to him of its negotiable demand notes within two and one-half months after the close of its taxable year and, therefore, was entitled to deduct the face amount of the notes from its gross income as an expense "paid" within Section 24(c) (1) of the Code.[4]  The Second and Sixth Circuits have similarly construed the word "paid" in Section 24(c) (1),[5] as has the Tax Court itself.[6]  Moreover, that court has held that the word "payment" (in Section 23(o), allowing deductions for charitable contributions) was satisfied when the contribution was made by check on December 31 and not paid in cash until the following year.[7]  Furthermore, the Tax Court has allowed a "dividends paid" credit under Section 27(b) (1) when a check was delivered on December 31 but not cashed until the next year.[8]  Finally, in Dick Brothers, Inc. v. Commissioner of Internal Revenue, 3 Cir., 1953, 205 F.2d 64, we held payment by check to an exempt employees' pension trust to be sufficient to satisfy the requirements of Section 23(p) (1) (E). It

is noteworthy that there the Commissioner did not dispute the *form* of the payment but raised only the question, regardless of the form, whether the check had been delivered to the trustee in time. Indeed, in that case, the Tax Court appears to have taken for granted that, if there was a timely delivery of the check, the fact that it was a check and not cash could not defeat the deduction asserted.[9]  We take the result of all this to be that "payment" or "paid" does not invariably mean "in cash."  If a check is sufficient, we see no reason why a negotiable demand note payable at a bank is not likewise sufficient.  On that score, we can add little, if anything, to what Judge Goodrich said in Anthony P. Miller, Inc., supra.  There it was said, in discussing checks and negotiable demand notes, " * * *  the two instruments have much in common * * * ."  164 F.2d at page 269.  A further factor appears in the cases now before us.  The demand notes were made payable at a bank.  Section 87 of the Negotiable Instruments Law seems to make such notes very much like checks, at least as between the maker and the bank.[10]

We think the Miller case was rightly decided and should be applied here unless there is some compelling reason why the word "paid" should be construed differently in Section 23(p) (1) (E) than it has heretofore been construed in Section 24(c) (1).

4.  "(c) Unpaid expenses and interest. In computing net income no deduction shall be allowed under section 23(a), relating to expenses incurred, or under section 23(b), relating to interest accrued—
"(1) If such expenses or interest are not paid within the taxable year or within two and one half months after the close thereof * * * ."  26 U.S.C. § 24(c) (1).

5.  Musselman Hub-Brake Co. v. Commissioner of Internal Revenue, 6 Cir., 1943, 139 F.2d 65; Celina Mfg. Co. v. Commissioner of Internal Revenue, 6 Cir., 1944, 142 F.2d 449; Commissioner of Internal Revenue v. Mundet Cork Corp., 2 Cir., 1949, 173 F.2d 757.

6.  Akron Welding & Spring Co., 1948, 10 T.C. 715.

7.  Spiegle Estate, 1949, 12 T.C. 524.  See also Estelle Broussard, 1951, 16 T.C. 23.

8.  International Bedaux Co., 1951, 17 T.C. 612.  The Commissioner acquiesced in this holding.  1952–1 Cum.Bull. 2.  The taxpayer petitioned for review of an unfavorable decision on another phase of the case and secured a reversal.  2 Cir., 1953, 204 F.2d 870.

9.  1952, 18 T.C. 832.

10.  "Effect of making instrument payable at a bank.  Where the instrument is made payable at a bank, it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon."  Act of May 16, 1901, P.L. 194, § 87, 56 Purdon's Pa.Stat.Ann. § 188.  See Britton, Bills and Notes § 238 (1943).

We are told that the reason compelling a different construction here is that Section 165(a) (2) [11] prohibits an exempt pension trust from using the corpus or income therefrom prior to the satisfaction of all liabilities to employees for any purpose other than for the exclusive benefit of the employees, and that this proscription is violated if the employer-taxpayer retains the actual cash but is, nevertheless, allowed the deduction simply by giving its note. The trouble with that argument is that the Treasury Regulations themselves state rather clearly that the trust may invest in the employer company,[12] and the Commissioner has issued a specific ruling to the same effect.[13] That is what happened here, and, thus, the argument fails.

Next, it is said that when Congress intends to be liberal in allowing deductions, it uses the phrase "paid or accrued" or "paid or incurred",[14] but here it used only the word "paid," and, therefore, cash is the only acceptable medium. The asserted distinction does not avoid the sweep of the Miller case, however, since there, too (24(c)(1), the single word "paid" was used.

As noted above, the Sachs case is nearly barren of evidence as to the solvency of the taxpayer and the value of the note at the time of delivery, and the Tax Court made no finding on either point. The only testimony on either matter was Miss Sachs' affirmative answer, on cross-examination, to the question whether the taxpayer could have paid the note in cash immediately after its delivery. Of course, the note was in fact paid in cash about three and one-half months after its delivery. Quite possibly that fact might be enough upon which to base a finding of solvency and value as of delivery. In Akron Welding & Spring Co., 1948, 10 T.C. 715, the Tax Court so held. But, however persuasive

that may be to the fact-finder, it remains a very shaky basis for a like finding by a reviewing court, especially when it appears that the Commissioner disputes the point, which was not the fact in the Slaymaker case. It would be an unjustified extension of the teaching of the Miller case to hold that there had been a "payment" when there may be serious doubt as to the value of the note. Thus, the Sachs case must go back to the Tax Court. If it should be found that the note was worth its face value, or some lesser value, the deduction should be allowed in the appropriate amount.

For the reason stated, the judgment of the Tax Court in No. 11,113 will be reversed. The judgment in No. 11,056 will be vacated and the cause will be remanded to the Tax Court for further proceedings in accordance with this opinion.

---

11. 26 U.S.C. § 165(a) (2).

12. U.S.Treas.Reg. 111, § 29.165–1(a)(6), 26 Code Fed.Regs. § 29.165–1(a)(6) (1949). H. S. D. Co. v. Kavanagh, 6 Cir., 1951, 191 F.2d 831, 838.

13. 5 C.C.H. 1953 Fed.Tax.Rep. ¶6144 (1953).

14. See 26 U.S.C. § 23(a) (1) and (2) (b) and (c).