SAN JUAN TRADING CO., INC., Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Respondent and Appellant.

No. 12776. Decided December 19, 1962.

*Arturo Estrella, Acting Solicitor General,* and *Carlos G. Látimer, Assistant Solicitor General,* for appellant. *L. E. Dubón, A. Torres Braschi,* and *R. García Cintrón* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Dávila.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On August 7, 1946, Forrest A. Hornisher, stockholder of the San Juan Trading Company, Inc., filed in the United States District Court for the District of Puerto Rico, an action against said corporation and its stockholders, alleging that because of a certain conspiracy to obtain control of the corporation, the original subscription of 100 shares made by the incorporators had been increased by defendants to 1,750 shares, without giving plaintiff an opportunity to exercise his right to acquire the proportional part of the aforesaid additional shares; that due to said additional issue, Celso Suárez and Juan A. Franco, as directors, owners, or persons with power to dispose of the shares so issued, succeeded in having the corporation distribute certain dividends per share, excluding plaintiff for the purpose of reducing his proportional part in the control of the corporation, of reducing his participation in the dividends and the value of his shares, causing him damages for $200,000; that at the same time, in violation of the rights which correspond plaintiff, as stockholder, the corporation has paid defendants Celso Suárez and Juan A. Franco a part of the net profits earned in business and commercial transactions of the corporation, which plaintiff estimates at not less than $200,000 of which no part whatsoever has been paid plaintiff, in spite of the fact that defendants Suárez and Franco knew that plaintiff had a right to a proportional part of the aforesaid profits. Plaintiff requested the payment of the amount of $400,000 for damages and the annulment of all the stock issued in which plaintiff had not participated. This complaint was an-

swered substantially denying the conspiracy and the damages claimed. The only part of this litigation which interests us to decide the case at bar is the stipulation of the parties and the judgment which was rendered therein, after including Enrique León as plaintiff, another minority stockholder.

On February 27, 1948 the stipulation of the parties was filed, requesting the dismissal of the two last causes of action for damages and unreceived profits, and that the first cause of action be sustained, rendering judgment against the San Juan Trading Company only for the amount of $70,000 for whichever claims of any kind, past or present, that plaintiffs might have against defendant San Juan Trading Company, its officials, directors, or stockholders for not having recognized plaintiffs' preemptive right in the understanding that the judgment would be considered satisfied upon the San Juan Trading Company paying to plaintiff Enrique León the sum of $48,300 and the sum of $21,700 to Lic. Orlando J. Antonsanti, by way of attorney's fees. By virtue of said stipulation the United States District Court for the District of Puerto Rico, rendered judgment on February 27, 1948 in the same terms of the stipulation.

As an additional consideration of the stipulation agreed upon, plaintiff Forrest A. Hornisher, owner of a certificate of four shares and debtor to the corporation for the sum of $5,610.01, and plaintiff Enrique León, owner of four certificates of one hundred twenty-five shares and debtor to the corporation for the amount of $10,973.66, subscribed a document endorsing and delivering said shares to the corporation in payment of their respective debts and the corporation agreed to liquidate both debts.

The form of payment agreed upon for the $70,000 in the aforesaid amounts, was the following: on February 26, 1948, Lic. Orlando J. Antonsanti was paid the sum of $7,750 and Enrique León was paid the sum of $17,250 in two checks—plaintiff's Exhibits 4 and 5—on that same date

a promissory note for the sum of $7,750 which expired on April 15, 1948 was delivered to Lic. Orlando J. Antonsanti, which promissory note was drawn on the Banco Popular de Puerto Rico on February 27, 1948 and paid by plaintiff to the bank on April 15, 1948, and another promissory note for the sum of $6,200 which expired on June 15, 1948 drawn on the Banco Popular de Puerto Rico on February 27, 1948 and paid by plaintiff to the bank on June 15, 1948—plaintiff's Exhibits IV, IV A, IV B, IV C—and a promissory note for the sum of $17,250 which expired on April 15, 1948 was delivered to Enrique León and was paid by plaintiff to Enrique León himself on April 15, 1948, and another promissory note for the sum of $13,800 which expired on June 15, 1948, which because it was lost, after the corresponding legal procedure, was paid by plaintiff to the Clerk of the Superior Court of Puerto Rico, San Juan Part, on January 26, 1949—plaintiff's Exhibits V A, V B, V C. There is no doubt that the payment of the $70,000 was made in its totality in the above-described manner, and the San Juan Trading Co. deducted the total item of $70,000 as a necessary and ordinary business expense in its income tax return for the year 1948.

The Secretary of the Treasury disagreed with the taxpayer's allegation that the item of $70,000 was an ordinary and necessary expense or a loss of the company because he believed that said $70,000 were capitalizable since it was the price that the corporation paid to acquire the shares of Hornisher and León, and even assuming that it was an ordinary and necessary expense, it could only deduct in the income tax return for the year 1948 the amount paid in cash—$17,250 to León and $4,750 to Lic. Antonsanti—because these were the only amounts actually paid by the taxpayer during its taxable year which began on April 1, 1947 and ended on March 31, 1948, and because its accounting system was on the accrual basis. The case went to trial.

The trial court, in rendering judgment in favor of the taxpayer decided: "After considering the evidence respecting the disbursement of the amount of $70,000, the deduction of which is in litigation herein, and all the circumstances which surround the same according to the case law and other authorities on that matter, we decide that said disbursement meets the requirement of an ordinary and necessary business expense of the taxpayer, and as such, it is deductible. Not only were the Hornisher and León suits a serious menace to the corporation business and its credit by virtue of the attack made against it and its directors, but a possible judgment for the amount claimed of $400,000 with interest jeopardized the very existence of the corporation, judging from the evidence in the record, if it had to pay, or be foreclosed, for that sum ... (P) The contention of the Secretary of the Treasury to the effect that the $70,000 were capitalizable because they were given as payment for the shares of León and Hornisher, is not supported by the evidence. It is clear from the evidence that what was paid by the corporation for said shares was the amount of $16,583.57 that Hornisher and León owed..." The trial court also reached the conclusion that the taxpayer had a right to deduct the whole amount for the taxable year 1948.

In his appeal before us, the Secretary of the Treasury assigns two errors: (1) "The Superior Court erred in determining that the $70,000 owed by plaintiff to León and to Lic. Antonsanti were deductible upon computing his income tax because they were ordinary and necessary expenses of plaintiff's business or industry; (2) the Superior Court erred in determining that the total deduction of $70,000 made by the taxpayer in the year 1948 was deductible in said year in spite of the fact that in said year only the amount of $23,000 (*sic*) was paid."

The applicable law in 1948 was § 32 (a) (1) of the Income Tax Act of 1924, which in its pertinent part provides: "In

computing the net income of a corporation or partnership subject to the tax imposed by section 28, there shall be allowed as deductions: (1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business ... Provided, That such expenses ... shall not be deductible if they are not actually paid during the taxable year, or if, under the accounting system used by the person to whom such payments are to be made, the amount thereof has not been included in his gross income during the taxable year, unless the same has been actually paid."

1. As to the first error, what the Secretary of the Treasury alleges at law is that the item of $70,000 included among the deductions in the income tax return for the year 1948 does not constitute an ordinary and necessary expense, and is not produced within the normal course of the business, since it concerns the satisfaction of a judgment and legal expenses incurred in a suit filed against the corporation, its directors, and stockholders in which a conspiracy is alleged for the purpose of defrauding certain minority stockholders. Starting from what was proved and not from the allegations, it is very difficult to consider the situation described herein as one in which the taxpayer accepted such conspiracy. What the taxpayer accepted was that the capital increase in shares without granting the preemptive right to the minority shareholders could cause an injury to its individual interest which could perhaps be compensable, and that the allegation of a conspiracy affected the good name of the corporation and that certain nuisance value should be recognized them. This interpretation is confirmed by the fact that the plaintiff shareholders desisted from their last two causes of action, in the stipulation filed to render judgment.

However, supposing that there actually was some illegality in the actions of the corporation, even so, satisfaction of the judgment or the legal expenses incurred, or both, would

be an ordinary and necessary expense. *Buscaglia, Treas.* v. *Tax Court*, 68 P.R.R. 794, 799 (Snyder, 1948) ; *Méndez & Co.* v. *Sec. of the Treasury*, 77 P.R.R. 877, 880 *et seq.* (Marrero, 1955) ; *P.R. Distilling Co.* v. *Sec. of the Treasury*, 78 P.R.R. 786, 790 *et seq.* (Pérez Pimentel, 1955). It would also be so in case of an allegation of fraud to obtain advantage over the minority shareholders, which would impair the good name of the corporation. *Lomas & Nettleton Co.* v. *United States*, 79 F.Supp. 886, 896–97 (Hincks, 1948) ; *International Shoe Co.* v. *Commissioner of Internal Revenue*, 38 B.T.A. 81, 88, 95–96 (Smith, 1938) ; *North American Investment Co.* v. *Commissioner of Internal Revenue*, 24 B.T.A. 419, 420 (Trammell, 1931).

The Secretary of the Treasury fundamentally rests upon the case of *Hales-Mullaly* v. *Commissioner of Internal Revenue*, 131 F.2d 509, 511–512 (Bratton, 1942), which decides in synthesis that when a conspiracy to defraud certain employees of a previous corporation, obliges the new corporation formed by certain relatives of the main shareholder of the previous corporation to defend himself in the suit filed by the employees of the previous corporation, the expenses of the aforesaid suit and attorney's fees can not be claimed by the newly-formed corporation, as an ordinary and necessary expense in carrying on trade or business. As may be seen, the facts do not correspond to those of the present case in which the suit is directly against the corporation, its directors, and shareholders, and within the normal course of the business. The taxpayer calls our attention to the scarce doctrinal value which this case has today, and refers us to the dissenting opinion of Judge Bruce in the case of *James E. Caldwell & Co.* v. *Commissioner of Internal Revenue*, 24 T.C. 597, 620 (Pierce), whose dissenting opinion becomes the majority opinion upon the review of the case by the Sixth Circuit: *Caldwell & Company* v. *Commissioner of Internal Revenue*, 234 F.2d 660, 661 (1956) (Per Curiam) ; see also,

*Kanne* v. *American Factors*, 190 F.2d 155, 160 (Denman, 1951) (Note 2).

██ The conclusion of the trial court is entirely correct in the sense that the satisfaction of the judgment as well as attorney's fees incurred are deductible respecting the ordinary and necessary expenses in carrying on trade or business, when confronted with an allegation of conspiracy or fraud the taxpayer decides to settle the litigation to avoid the loss or the disrepute which such allegation might cause the business.

2. As to the deduction of the totality of the item during the year 1948, the Secretary of the Treasury alleges that only the amount of $25,000 represented by the two checks in favor of Mr. León and Lic. Antonsanti would be deductible in 1948 because it was the amount actually paid, but not the amount of $5,000 represented by the promissory notes in their favor, because their payment was not made within the taxable year 1948. The taxpayer calls our attention to the existing difference between § 24(c) of the Federal Income Tax Act and § 32(a)(1) of our Income Tax Act of 1924, as we pointed out in the case of *Clínica Juliá* v. *Secretary of the Treasury,* 76 P.R.R. 476, 490 (Ortiz, 1954), upon deciding in part, that: "The Federal Act requires that the expenses shall have been *paid.* Our Act goes farther and specifically requires that the expenses shall have been *actually* paid. Such an addition is clearly indicative of our legislature's intent to require that the payment be effective, actual, concrete, and real. Constructive payment does not meet this requirement."

There is a noticeable difference between the situation of facts which we studied in the case of Clínica Juliá—a mere allowance in the books of the clinic from which the physicians of the institution could or could not draw—and the facts of this case—delivery of the promissory notes of a solvent corporation which could be negotiated as soon as delivered. Be-

sides, there is no such difference between the federal statute and ours. As a matter of fact, the only thing that our statute did in adding the requirement of "actually paid," was to incorporate in our law as a legislative statement what up to this moment had been the interpretation of American courts of the federal provision.

Since the requirement of the federal judicial interpretation is identical to our insular legislative declaration, federal case law on the payment of negotiable promissory notes is applicable to our own law. The cases cited by the trial court: *Musselman Hub-Brake Co.* v. *Commissioner of Internal Revenue*, 139 F.2d 65, 68 (Hamilton, 1943); *Celina Manufacturing Co.* v. *Commissioner of Internal Revenue*, 142 F.2d 449 (1944) (Per Curiam) applying the case of Musselman; *Anthony P. Miller Inc.* v. *Commissioner of Internal Revenue*, 164 F.2d 268, 269 (Goodrich, 1947); *Commissioner of Internal Revenue* v. *Mundet Cork Corp.*, 173 F.2d 757 (1949) (Per Curiam) applying the cases of Miller and Musselman; *Sachs* v. *Commissioner of Internal Revenue*, 208 F.2d 313, 315 (Staley, 1953), in the sense that the delivery of negotiable promissory notes of a solvent enterprise is equivalent to the payment in cash or by check, are all correctly applied. No difference should be made between the promissory notes on demand and the promissory notes on a fixed term: *Mid-State Products Co.* v. *Commissioner of Internal Revenue*, 21 T.C. 696, 719 (Turner, 1954). It should be clear that all this is on condition that the system of payment by negotiable obligations is not made for the purpose of evading taxes or of adjusting the payment to the taxpayer's only convenience. In the case at bar the evidence shows that it is an honest operation which was completely fulfilled pursuant to the original terms of the transaction.

This being so, the judgment should be affirmed.