Weise-Winckler Bindery, Inc. v. Commissioner.
Weise-Winckler Bindery, Inc. v. Commissioner
Docket No. 3304-66.
United States Tax Court
T.C. Memo 1967-259; 1967 Tax Ct. Memo LEXIS 2; 26 T.C.M. (CCH) 1336; T.C.M. (RIA) 67259; December 28, 1967
Kenneth R. Hughes, 1816 First Nat'l Bank Bldg., Cincinnati, Ohio, for the petitioner. Robert A. Roberts, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined deficiencies in income tax for the taxable years 1960 through 1963 as follows: Taxable Year
Deficiency
1960
$5,100.00
1961
7,352.58
1962
9,800.47
1963
8,517.30
*4 The two issues for our determination are: (1) Whether the amounts paid to an employee were reasonable compensation and therefore deductible as an ordinary and necessary trade or business expense under section 162. [1]
(2) Whether certain salary deductions were barred by the operation of section 267. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Weise-Winckler (hereinafter referred to as petitioner) is a corporation organized under the laws of the State of Ohio in 1945. At the time the petition to this Court was filed, petitioner was located at Cincinnati, Ohio, its principal place of business. Petitioner prepared its tax returns employing an accrual method of accounting and filed these returns for the calendar years 1960 through 1963, inclusive, with the district director of internal revenue, Cincinnati, Ohio. From the date of its incorporation through the present time, petitioner's principal activity has been binding new and used books. Edwin D. Allen (herein called Allen) began to organize *5 the petitioner in 1945. He had been in the bookbinding business since 1923 and other than petitioner, Allen had founded and operated other bookbinderies in Chicago, Illinois, Cleveland, Ohio, Dallas, Texas, and Waco, Texas. Allen purchased the business of Weise Bindery in Cincinnati, Ohio, and shortly thereafter incorporated it as Weise Binding Company, Inc. In 1948 Weise Binding Company, Inc., merged with the Winckler Company and became Weise-Winckler Bindery, Inc., the petitioner. During the same period, Allen transferred some of the customers of his Chicago bookbinding business to petitioner. Allen had been active in the design and perfection of machines used in the bookbinding industry. He allowed petitioner to use several of his machines in its operation which had proven to be profitable innovations in Allen's other businesses. At the time of the organization of petitioner, Allen worked hard in order to bring about an efficient organization. He was instrumental in the merger of the Weise Binding Company, Inc., and the Winckler Company, and Allen attracted John H. West, Jr., into becoming an employee of petitioner. Since that time Allen has supervised the training of West, who *6 has become an able administrator so that Allen could be freed to operate his other business interests. Some of Allen's other non-bookbinding activities consisted of the following: (1) In 1953, he organized an artificial foliage business in Chicago. Two years later he moved this business to Waco, Texas, and in 1960 from Waco, Texas to Ft. Lauderdale, Florida, its present location. (2) In 1956, Allen had a plastics business in Cleveland, Ohio, known as Lady Carol Company. This business was shortly moved to Ft. Lauderdale, Florida, and was later incorporated into Carol Artificial Foliage, Inc. (hereinafter referred to as Carol). By 1960 Carol had established a large factory operation in Ft Lauderdale. During the period 1960 through 1963 Allen kept in contact with petitioner by telephone and through the mails, as daily reports of the company were sent to him. He visited the company offices approximately four to six times a year, during which he stayed for a period of one to two weeks. Besides making the policy decisions of the organization, Allen's other duties were the negotiation of leases and loans. Petitioner habitually borrowed from $30,000 to $50,000 annually during the spring *7 in order to provide enough working capital for the company during the busy summer months. During the period 1960 through 1963, petitioner employed three salesmen, one of whom Allen personally hired. These salesmen, whose annual salaries averaged approximately $8,000 a year, were employed on a full-time basis and were expected to travel each week. Petitioner's method of acquiring its larger accounts is through the use of bids. The smaller customers are gained through direct mail or through petitioner's salesmen. The reported net profit and loss, cash dividends, and salary deductions for John West and Edwin Allen for the years 1948 through 1963 are as follows: Salary
Net Profit
Year
(Loss)
Cash Dividend
John West
Edwin Allen [1]
1948
$ 2,863.83
$ 560.00
$ 4,200.00
$ 5,115.00
1949
2,216.33
5,300.00
2,200.00
1950
902.88
300.00
6,507.52
3,542.75
1951
1,426.74
462.00
7,010.00
4,207.60
1952
819.06
1,308.00
7,830.00
3,967.67
1953
2,158.18
1,448.00
8,350.00
3,500.00
1954
(911.51)
1,596.00
8,485.00
4,766.66
1955
4,098.84
9,400.00
4,075.00
1956
4,509.64
1,034.00
12,500.00
6,100.00
1957
4,038.46
1,928.00
14,346.00
7,372.21
1958
5,910.25
2,410.00
18,204.90
11,911.11
1959
8,728.56
2,337.00
22,885.00
7,408.32
1960
7,826.17
2,337.00
23,557.78
21,000.00
1961
10,059.98
2,337.00
27,749.90
24,000.00
1962
15,129.96
2,337.00
31,815.39
26,800.00
1963
18,505.61
3,895.00
36,192.34
27,127.04
*8 Petitioner claimed deductions for the taxable years 1960, 1961, and 1962 for salary of West which includes payments of $4,000, $4,500, and $4,000, respectively, that were made more than 2 1/2 months after the close of the respective taxable year. The balance sheets for petitioner as of December 31 for the years 1959 through 1963 are set out below: COMPARATIVE BALANCE SHEET OF WEISE-WINCKLER BINDERY, INC., AS OF: ASSETS
12-31-59
12-31-60
12-31-61
12-31-62 [1]
12-31-63
Cash
$ 9,343.99
$ 5,238.33
$ 15,827.16
$ 17,533.72
$ 20,501.96
Notes & accounts receivable
46,726.34
43,643.79
47,733.67
40,894.00
44,870.47
Inventories
9,179.58
19,941.30
12,852.37
13,881.62
13,819.25
Prepaid expenses
432.74
664.68
1,108.55
3,299.34
1,441.71
Buildings & other fixed depreci-
able assets
62,833.94
72,255.38
87,144.26
93,780.58
109,059.18
Accumulated amortization and
depreciation
(33,272.21)
(41,523.06)
(52,160.09)
(54,536.08)
(70,190.68)
Cash surrender value of life
insurance
4,262.77
5,564.68
6,518.33
8,104.62
9,396.27
Deposits on purchases of equip-
ment
878.40
2,500.00
Deposits, Workmen's compensa-
tion insurance
400.00
650.00
Totals
$99,507.15
$106,663.50
$119,024.25
$123,357.80
$132,048.16
LIABILITIES AND CAPITAL
Accounts payable
$ 7,695.96
$ 7,075.25
$ 9,877.16
$ 8,833.61
$ 19,642.33
Mortgages, notes and bonds pay-
able in less than 1 year
15,627.10
19,355.42
12,776.00
9,061.45
5,310.52
Other current liabilities
16,743.71
19,084.95
27,439.77
25,544.14
24,050.69
Mortgages, notes and bonds pay-
able in 1 year or more
1,875.00
810.00
4,594.00
7,397.89
1,808.03
Capital stock
38,950.00
38,950.00
38,950.00
38,950.00
38,950.00
Paid-in or capital surplus
4,180.60
4,180.60
4,180.60
4,180.60
4,180.60
Earned surplus and undivided
profits
14,434.78
17,207.28
21,206.72
29,390.11
38,105.99
Totals
$99,507.15
$106,663.50
$119,024.25
$123,357.80
$132,048.16
*9 As these differences do not affect the asset totals we shall disregard them in the opinion. During the years 1960 through 1963 petitioner had outstanding 190 shares of class A common stock and 199 shares of class B common stock. Petitioner's stock was held at all times during the years 1960 through 1963 as follows: Stockholder
Class A
Class B
Total
Louise Allen (Wife of Edwin Allen)
135
18
153
John West
25
98 1/2
123 1/2
Margaret Davies (Sister of John West)
12 1/2
31 1/2
44
Elizabeth Harrison (Sister of John
West)
12 1/2
31 1/2
44
R. E. Phillips
5
13
18
Lucille Thomas
0
7
7
Total Shares
190
199 1/2
389 1/2
On April 1, 1966, respondent *10 mailed to petitioner the statutory notice of deficiency with the following explanations: It is held that deductions claimed for compensation paid to John H. West, in the amounts of $4,000.00 in the year 1960, $4,500.00 in the year 1961, and $4,000.00 in the year 1962, are not allowable deductions under section 162 or any other section of the Code because they were not paid within 2 1/2 months after the close of the taxable year in which they were deducted, as required by section 267 of the Code. It is held that you are entitled to claim deductions for compensation paid to Edwin D. Allen in the amount of $8,000.00 in 1960 in lieu of $21,000.00 claimed, $8,000.00 in 1961 in lieu of $24,000.00 claimed, $8,000.00 in 1962 in lieu of $26,800.00 claimed and $8,000.00 in 1963 in lieu of $27,127.04 claimed, because it is held that $8,000.00 constitutes a reasonable compensation for services rendered. * * * Opinion The first issue for our determination is whether the amounts paid to Allen as compensation for his services were reasonable and therefore deductible as ordinary and necessary trade or business expenses under section 162. *11 Reasonable compensation is a question of fact, Langley Park Apartments, Sec. C, Inc., 44 T.C. 474 (1965), affirmed per curiam 359 F. 2d 427 (C.A. 4, 1966). In determining what constitutes reasonable compensation, it is necessary to examine the whole situation. Universal Steel Co., 5 T.C. 627 (1945). The burden of proof is upon the petitioners, Ben Perlmutter, 44 T.C. 382 (1965), affd. 373 F. 2d 45 (C.A. 10, 1967). Reasonable compensation has been defined as "such [an] amount as would ordinarily be paid for like services by like enterprises under like circumstances." Section 1.162-7(b)(3), Income Tax Regs. Accordingly, unreasonable compensation has been explained as "salaries * * * in excess of those ordinarily paid for similar services." Section 1.162-7(b)(1), Income Tax Regs.
Basically, respondent argues that the amounts are unreasonable as Allen only visited petitioner's offices four to six times a year because he lived in Florida during the years in question. *12 Respondent further argues that petitioner has not met its burden because there is nothing in the record that shows what services Allen performed during this time for petitioner that would justify the amount of compensation paid to him. The petitioner argues that the amounts paid Allen during the period 1960 through 1963 were at least in part compensation for services performed in previous years and we agree with petitioner. The landmark case in this area, Lucas v. Ox Fibre Brush Co., 281 U.S. 115; 50 S. Ct. 273 (1930), allows an accrual basis taxpayer to deduct in the year paid, amounts of compensation, even though the services were rendered in a period prior to the current taxable year. First, Allen purchased Weise Bindery in 1945, and it has continually operated since that date as a bookbindery. In the early years, Allen spent a considerable amount of time and effort in Cincinnati improving Weise Bindery. Subsequently, he engineered the merger with Winckler that caused petitioner to be organized, he attracted and trained younger men to handle the everyday *13 operation of petitioner, and he provided the necessary managerial and technical advice. The stipulation shows that since the merger until 1959, Allen has received an average annual salary approximately of only $5,350. We do not feel this was adequate compensation for the services Allen has rendered the corporation. Moreover, if the amounts respondent found to be unreasonable were added to the total compensation paid Allen during 1948 through 1959, Allen's average annual salary would only be approximately $10,900, an amount we do not consider to be unreasonable under the circumstances. In addition, a witness who was president of the leading group of companies in the bookbinding industry unequivocably testified that Allen is well known in the industry as a pioneer in the bookbinding techniques, salesmanship, and that without Allen, petitioner would not be in the position it now occupies in the industry. Furthermore, he stated that from his knowledge of the industry Allen was not unreasonably compensated in his opinion. For the above reasons we find the amounts paid were reasonable compensation for services rendered and therefore deductible under section 162. Next, respondent *14 disallowed petitioner's deduction for West's salaries in the amounts of $4,000, $4,500, and $4,000, for the taxable years 1961, 1962, and 1963, respectively. Respondent based this disallowance on the theory of section 267(a)(2), which denies a deduction for expenses that would ordinarily be deductible under sections 162, 163 or 212. However, for a deduction to be barred under this section, all three requirements must exist as set forth below in section 267(a)(2)(A) - (C). [2]Akron Welding & Spring Co., 10 T.C. 715 (1948); Platt Trailer Co., 23 T.C. 1065 (1955); Young Door Co., Eastern Division, 40 T.C. 890 (1963). Therefore, in order to sustain its position that the salary deduction for West was allowable, petitioner must prove that at least one of the three conditions did not exist. *15 First, petitioner asserts that it does not fall under the first condition set out in section 267(a)(2)(A): If within the period consisting of the taxable year of the taxpayer and 2 1/2 months after the close thereof (i) such expenses or interest are not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom the payment is to be made; and Petitioner asserts, and we agree, that Commissioner's regulations, section 1.267(a)-1(b)(1)(iii), specifically provides that the constructive receipt doctrine may be employed to determine whether an item is includable in the gross income of the payee within 2 1/2 months after the close of petitioner's taxable year. In line with this, petitioner's theory is that the amounts, even though paid by petitioner to West each year sometime subsequent to 2 1/2 months after the close of petitioner's taxable years, were constructively received within the allowable period. Under this Code section, income has been found to be constructively received by taxpayer when it is credited to his account or set aside for him so that he *16 may draw upon it at any time without substantial limitation or restriction. Young Door Co., Eastern Division, supra.Therefore, where the income is not unqualifiedly subject to the taxpayer's demand and his failure to receive it is not the result of his own choice, there is no constructive reciept. Basil F. Basila, 36 T.C. 111 (1961). The facts show that a substantial portion of West's salary was actually paid to him over 2 1/2 months after the close of the taxable year. Allen testified that each year petitioner borrowed about $30,000 to $50,000, an amount equal to a large portion of the total net worth of petitioner. In order to provide working capital for the busy summer months, this borrowing was done during the spring, the time at which West should have been paid in order to qualify under section 267. We are not convinced from the facts that West had an unfettered ability to acquire his unpaid salaries during the proper periods. We cannot find that West constructively received his salary within 2 1/2 months after the close of petitioner's taxable year. Second, petitioner argues that West does not qualify as a person who owns either directly or *17 indirectly more than 50 percent in value of the outstanding stock of petitioner as provided in section 267(a)(2)(C) and 267(b)(2). [3] The findings of fact show that the outstanding stock is owned by the following persons: Stockholder
Class A
Class B
Total
Louise Allen (Wife of Edwin Allen)
135
18
153
John West
25
98 1/2
123 1/2
Margaret Davies (Sister of John West)
12 1/2
31 1/2
44
Elizabeth Harrison (Sister of John West)
12 1/2
31 1/2
44
R. E. Phillips
5
13
18
Lucille Thomas
0
7
7
Total Shares
190
199 1/2
389 1/2
Applying section 267(c)(4), [4] it is clear that for purposes of section 267, it can be considered that West owns over 50 percent of the number of shares of outstanding *18 stock of petitioner. However, the statute specifically states that the individual must own, directly or indirectly, 50 percent in value. As petitioner has two classes of stock outstanding, it is incumbent upon us to determine the relative values of these stocks in order to ascertain if the requirement in section 267(a)(2)(C) has been fulfilled. The only evidence in the record as to their value is the less than objective testimony of Allen, who indicated that he had always considered class A to be worth 20 percent more than class B. As this is the only evidence of the stocks' value, we feel we cannot disregard it. However, even applying these values, the calculations set forth below [5] show that West owns either directly or indirectly more than 51 percent of the *19 value of the outstanding stock of the petitioner. Therefore, West qualifies as an individual owning more than 50 percent of the value of the outstanding stock under section 267(b)(2) and the requirement of section 267(a)(2)(C) is fulfilled. Accordingly, as the petitioner has not presented any other theory or evidence on which to overcome the presumption of correctness *20 which attaches to respondent's determination, we find for respondent on this issue. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
1. Includes some payments for some of the years prior to 1960 to Edwin Allen Company, an Illinois corporation, the outstanding stock of which was owned by Edwin Allen.↩
1. These are the amounts shown on the balance sheet per petitioner's tax return for the taxable year 1962. Some unexplained differences on the balance sheet of petitioner's tax return for the taxable year 1963 appeared as follows:
↩
Increase (Decrease)
for amounts shown
1963 Tax Return
on 1962 tax return
Prepaid expenses
$ 2,422.08
$ (877.26)
Building and other depreciable assets
99,645.12
5,864.54
Accumulated amortization depreciation
59,523.36
4,987.28
2. SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS. (a) Deductions Disallowed. - No deduction shall be allowed - * * *
(2) Unpaid expenses and interest. - In respect of expenses, otherwise deductible under section 162 or 212, or of interest, otherwise deductible under section 163, - (A) If within the period consisting of the taxable year of the taxpayer and 2 1/2 months after the close thereof (i) such expenses or interest are not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom the payment is to be made; and (B) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (C) If, at the close of the taxable year of the taxpayer or at any time within 2 1/2 months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b).↩
3. SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS. * * *
(b) Relationships. - The persons referred to in subsection (a) are: * * *
(2) An individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual: * * *↩
4. SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS. * * *
(c) Constructive Ownership of Stock. - For purposes of determining, in applying subsection (b), the ownership of stock - * * *
(4) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; and * * *↩
5. Number of
Number of
Shares Class
Total
Shares Class
Total
Shareholder
A Stock
Value .
Arbitrary value assigned based on the opinion that Class A was worth more than class B. [1]
Value
B Stock
Value .[1]
Value
John West
25
6
150
98.5
5
492.5
Margaret Davies .
Ownership attributed to West under sec. 267(c)(2) and 267(c)(4).
[2]
12.5
6
75
31.5
5
157.5
Elizabeth Harrison .[2]
12.5
6
75
31.5
5
157.5
Others
140
6
840
38
5
190
190
6
1,140
199.5
5
997.5
997.5
/
Total arbitrary value of all outstanding
stock of petitioner
2,137.5
OWNED OR CONSIDERED OWNED BY JOHN WEST FOR PURPOSES OF SECTION 267: ↩
150
75
75
1,107.5
492.5
= 51.8 percent
157.5
2,137.5
157.5
1,107.5