### BRANDEIS v. ALLEN, Collector of Internal Revenue.

#### No. 1938.

District Court, D. Nebraska, Omaha Division.

Feb. 22, 1932.

Kennedy, Holland & De Lacy, of Omaha, Neb., for Brandeis.

Ambrose C. Epperson, Asst. U. S. Atty., of Omaha, Neb., for the Collector.

WOODROUGH, District Judge.

The plaintiff presents two causes of action to recover back from the collector income tax items paid under protest.

The first one arises out of an item of deduction for loss in the year 1919. The proof is that the taxpayer had acquired the stock of the J. L. Brandeis & Sons corporation by inheritance and that his cousin, Mr. George Brandeis, was engaged under contract with the corporation as manager of the business. In March of 1919 a so-called tripartite agreement was entered into in writing by and between the taxpayer, the corporation, and Mr. George Brandeis which contains the following provisions among others:

"Whereas, J. L. Ervine Brandeis, now twenty-three years of age, is the owner of thirteen hundred and thirty-three and one-third (1333⅓) shares of the capital stock of J. L. Brandeis & Sons, a corporation organized under the laws of Nebraska, engaged in the mercantile business in the city of Omaha, and

"Whereas, the remaining twenty-one hundred and sixty-six and two-thirds (2166⅔)

shares of the capital stock of said corporation are held by J. L. Ervine Brandeis, George Brandeis and John L. Kennedy, as Trustees under the Last Will and Testament of Arthur D. Brandeis, Deceased, to be conveyed to J. L. Ervine Brandeis when he is twenty-nine (29) years of age, and

"Whereas, George Brandeis is the President of J. L. Brandeis & Sons; and the Manager of said mercantile business, under a contract entered into between the said George Brandeis, and J. L. Brandeis & Sons, by Arthur D. Brandeis, the father of J. L. Ervine Brandeis, then president of the corporation, which said contract will expire January first, 1923, and

"Whereas, said J. L. Ervine Brandeis is anxious to interest the said George Brandeis personally, financially and permanently, in the business of J. L. Brandeis & Sons; so that the present efficient management of said business, under George Brandeis, may be continued indefinitely.

"Now therefore, to that end, it is hereby agreed by and between said J. L. Ervine Brandeis, George Brandeis, and J. L. Brandeis & Sons:

"First. That J. L. Ervine Brandeis shall sell and transfer to George Brandeis, seven hundred (700) shares of his stock in J. L. Brandeis & Sons, at the par value of One Hundred Dollars ($100.00) per share, the stock so transferred constituting one-fifth of the capital stock of the corporation.

"Second. In consideration of the sale and transfer of said stock at the price stated, the salary of George Brandeis, as President and Manager shall be reduced from One Hundred and Fifteen Thousand Dollars ($115,000.00) per annum, to sixty thousand dollars ($60,000.00) per annum, effective from February first, 1919, to and including December thirty first, 1922, the date of the termination of his present contract as manager of said business.

"Third. Increases of salary, if any, hereafter granted to George Brandeis as President and Manager, and to J. L. Ervine Brandeis as Vice President, of J. L. Brandeis & Sons, shall be equal, so that if the salary of one is increased, the salary of the other shall be increased in like amount."

Other numerous clauses of the contract are designed to cover details of the general recited objects and purposes.

In the original petition in this case it was pleaded that plaintiff sold the 700 shares of stock to Mr. George Brandeis pursuant to written contract (doubtless referring to the above tripartite agreement), but on the trial amendment was made to the effect that the sale was oral. On consideration of the evidence I find that the fact was as originally pleaded and that all oral negotiations were merged in the written contract above referred to.

It clearly appears from the evidence that the 700 shares of stock transferred by the taxpayer to Mr. George Brandeis pursuant to the contract were actually worth much more than the specified price of $100 a share. In fact, they were worth several hundred dollars a share, and the claim of the taxpayer is that he suffered a loss of $114,723 by thus letting the stock go to his cousin for $100 a share. Study of the contract and the transaction convinces, however, that although the taxpayer did receive only $100 in money for each share of his stock there were other considerations moving to him and to the corporation in which he still remained a four-fifths owner. There is no proof that upon the whole deal (of which the transfer of the stock was only one feature) the taxpayer suffered any loss to justify a deduction. The first cause of action therefore is not sustained.

The additional assessment complained of in the second cause of action was for salary bonus paid to the taxpayer by the corporation. It was returned by the taxpayer as part of his income in the year 1919, but the collector found it to be part of the income of 1920.

The proof is that in October, 1919, the taxpayer and Mr. George Brandeis, who together were the beneficial owners of all of the stock of the corporation and were also the directors and officers who actively controlled its affairs from day to day, informally decided upon a bonus or compensation additional to stipulated salary to be paid to themselves and other employees by the corporation for the year 1919. The occasion was the unusual success and large profit of the business for the year 1919 already apparent in October. No entry was made concerning this action on the books or minutes of the corporation during the year 1919, but the testimony of the witnesses leaves no doubt that the thing was done as claimed nor that the informal manner of doing it was in conformity with the way the corporation's business was generally conducted. It is true there was another director of the company, Mr. J. L. Kennedy, who was a trustee jointly with Mr. George and Mr. J. L. Ervine Brandeis holding some of the corporate stock. But formal

directors' meetings were ordinarily held only once a year and all the business was actually controlled and carried on by the persons who fixed the bonus in question and those two bound the corporation in all the business in the same informal way that the transaction in question was effected.

There is direct conflict between the corporation minutes and records and the oral testimony concerning the time when the bonus contracts became obligatory. The records would indicate that they were allowed in February, 1920, and were made payable as of the end of the corporation's fiscal year, to wit, January 31, 1920. But the oral testimony is that the bonuses were fixed and made obligatory on the corporation in about October, 1919. And there are practically no conclusive circumstances for the court to resort to. During the year 1919 both Mr. George Brandeis and Mr. J. L. Ervine Brandeis drew out from the corporation much more than regular salary, and the apparent overdraft was not reconciled on the books by the bonus items until much later (March, 1920). On the other hand, the corporation was permitted by the government to treat the bonuses as accruals of 1919 in its income tax settlement, and Mr. George Brandeis was permitted to treat his bonus as part of his income for 1919.

A circumstance not without significance is that the allocation of the J. L. Ervine Brandeis bonus to the year 1920 instead of 1919 really distorts the true income for these years as the taxpayer himself regarded it at the time. The evidence shows that both years were good years and that the taxpayer spent largely in each of the years. There is no doubt that he did so in reliance upon the bonus income. Although he allowed his drafts on the corporation to appear as overdrafts in 1919, he undoubtedly went on building his house and spending the money upon the understanding that the bonus was fixed and payable. The whole transaction was one of a numerous class of transactions which were carried on in the ordinary course of the corporation business day in and day out through the year in which everything was orally agreed upon and fully consummated before any record was made. The making of the record was matter of form merely and erroneous as to dates.

The bonus part of the income was therefore taxable for 1919 and not for 1920. The question whether the accrual or cash basis of accounting is applicable is immaterial because the taxpayer actually drew the money and spent it in the year 1919 and the corporation in the same year obligated itself to the disbursement.

Judgment should be entered pursuant to the findings; counsel to prepare the same.