**HYLAND v. COMMISSIONER OF INTERNAL REVENUE.**

No. 251.

Docket 21276.

United States Court of Appeals
Second Circuit.

Argued May 3, 1949.

Decided June 29, 1949.

John F. Finnell, New York City (Frank T. Kleiger and S. Stuart Kleiger, New York City, of counsel), for petitioner.

Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, Helen Goodner and Edward J. P. Zimmerman, Special Assistants to Attorney General, for respondent.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This appeal involves the petitioner's income tax for the year 1943. The issue is whether compensation paid him in 1943 for services rendered to a corporation in 1942 should be taxed in the year of actual receipt, as the Tax Court held, or in the earlier year under the doctrine of "constructive receipt," as the petitioner contends.

The facts were stipulated. During the years 1942 and 1943 Mr. Hyland, the taxpayer, owned 85.71% of the stock of a personal service corporation of which he was the president. He kept his books and filed his income tax returns on the cash receipts and calendar year basis. The corporation kept its records and filed its income tax returns on the accrual basis and for a fiscal year ending January 31st. The corporation was awarded two Navy contracts with respect to which Mr. Hyland performed valuable services during 1942 without any contract as to his compensation until December 23, 1942. On that date the directors voted to pay him $40,000 for his services for the fiscal year ending January 31, 1943.[1] When the corporation closed its books for the fiscal year ending January 31, 1943, $40,000 was charged as an expense of the business to "Officers Salaries" and credited to an account headed "Accrued Payrolls Payable." On March 6, 1943, $40,000 was paid to Mr. Hyland and charged to the last mentioned account. The balance sheet of the corporation as of December 31, 1942 showed current assets of nearly $248,000, of which approximately $25,000 was cash on hand and in banks, and current liabilities were about $150,000, leaving some $99,000 representing capital stock and surplus.

In his original income tax return for

---

[1] The corporate resolution reads as follows:

"Whereas, the compensation for the services of Richard V. Hyland in connection with Contract NOy-5182 for the fiscal year ending January 30, [sic] 1943, has been fixed in the sum of $25,-000, and his compensation in connection with Contract NOy-5888 has been fixed in the sum of $15,000. Now, therefore, it is resolved:

"That the Corporation pay to Richard V. Hyland for his compensation and services, aforesaid sums aggregating $40,000."

1942 the taxpayer made no mention of any part of the salary authorized by the directors' vote of December 23, 1942. In an amended return, filed on April 11, 1946, he reported $34,166.66 as salary earned from February 1, 1942 to December 31, 1942.[2] In his return for the year 1943 filed on March 14, 1944 he reported compensation from the corporation in the amount of $22,500. This figure included $5,833.34 of the $40,000 compensation voted in December 1942. The Commissioner surcharged the 1943 return by adding to the income reported the item of $34,166.66 received on March 6, 1943 for services rendered in 1942. This produced the deficiency complained of, which the Tax Court has affirmed.

Following Ross v. Commissioner, 1 Cir., 169 F.2d 483, we have recently decided in Weil v. Commissioner, 173 F.2d 805, 807 that the doctrine of "constructive receipt" may be invoked in favor of a taxpayer as well as against him. The Tax Court did not take a contrary view; it assumed that the doctrine was available to the petitioner, but it decided on the merits that the sum of $34,166.66 was not constructively received by him in 1942.

This decision would be plainly correct if this were a case where the corporation were not within the control of the taxpayer employee by reason of stock ownership. See Sanchez v. Commissioner, 2 Cir., 162 F.2d 58, 59, certiorari denied 332 U.S. 815, 68 S.Ct. 154, 92 L.Ed. 392. The petitioner was on the cash basis and compensation for his 1942 services was not paid him until 1943. Constructive receipt of income by a taxpayer on the cash receipts basis is a creature of the Regulations; they prescribe the conditions which make the doctrine applicable.[3] Disregarding for the moment the fact that the taxpayer owned 85% of the outstanding stock of the corporation, it could not be successfully contended that those conditions were met. The directors' resolution merely voted the amount of compensation to be paid the petitioner for services during the fiscal year ending January 31, 1943; it said nothing as to the time of payment. When we turn to the minutes of the directors' meeting it appears that the taxpayer's 1942 services in connection with the first Navy contract had been completed by November 15th; yet he claims as allocable to 1942 only $22,916.66 of the $25,000 authorized for services on this contract. After November 15, 1942 he devoted all his time to the second Navy contract and his services on that contract were not to be completed until January 15, 1943. Although his compensation on that contract was fixed at the rate of $250 per day, there is nothing to indicate that he was to be paid any part of the $15,000 authorized until completion of his services. No entries were made on the corporate books showing that the taxpayer was entitled in 1942 to any part of the authorized $40,000 of salary. The mere authorization of the amount of salary does not satisfy the requirement that income be credited or set apart or made available to the taxpayer so that it may be drawn at any time. Cf. Avery v. Commissioner, 292 U.S. 210,

---

[2] Before the Tax Court in the present case the parties stipulated that $22,916.66 of the $25,000 compensation authorized for services in connection with Contract NOy-5182 represented salary allocable to the calendar year 1942, and $11,250 of the $15,000 compensation authorized for services in connection with Contract NOy-5888 represented salary allocable to the year 1942.

[3] Treas. Reg. 111, Sec. 29.42-2: "Income Not Reduced to Possession.—Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. A book entry, if made, should indicate an absolute transfer from one account to another. If a corporation contingently credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt."

215, 54 S.Ct. 674, 78 L.Ed. 1216. In short, there is nothing, aside from his stock ownership, to indicate that he could have obtained any of the money at any time before the whole of it was paid to him on March 6, 1943.

Indeed, the taxpayer relies solely, in arguing for his constructive receipt of $34,166.66 in 1942, on his control of the corporation by reason of his controlling stock ownership. He contends that he had unrestricted control of this sum because "all he had to do to receive it was to draw a check for this amount." The record does not bear out this contention. There is no evidence that the taxpayer, as president, could draw checks on the corporate bank account. Cf. Brandeis v. Allen, D.C.Neb., 60 F.2d 1004, appeal dismissed 61 F.2d 1018. Nor was the cash on hand and in bank on December 31, 1942 sufficient to meet a check of $34,166.66, although there were sufficient current assets to have accomplished payment of that sum without financial embarrassment to the corporation. Cf. Jacobus v. United States, 9 F.Supp. 41, 45, 80 Ct.Cl. 357. No doubt it is true that the taxpayer by reason of his very large stock ownership, could have effectively directed the various agents having charge of the corporation's bookkeeping and financial affairs to take action to make available to him the necessary cash and to draw a check in his favor for the amount claimed by him for 1942 services. But he did not do so; indeed, there is no evidence that he even knew of the directors' resolution authorizing his compensation before he received it. The argument that the rule of constructive receipt becomes applicable with the mere possession of such power, without any indication of an intent to exercise it, proves too much. It would mean that in every close corporation the corporate earnings are immediately constructively received by the controlling stockholder provided their withdrawal would not make the corporation insolvent. But the law ordinarily treats a corporation and its controlling stockholder as separate juristic persons, and they are separately taxable. Whether the Treasury—in the absence of evidence that the corporate form was adopted to avoid taxes—could successfully invoke the constructive receipt doctrine against the sole stockholder of a one-man corporation we are not called upon to say. However that may be, we think that where, as here, the controlling stockholder treats himself as a creditor and the corporation as his debtor, he must, if he invokes the doctrine of constructive receipt, prove that the requirements of the Regulations have been satisfied. He does not make such proof merely by showing that he owns more than 50% of the corporation's outstanding stock. Accordingly the taxes for the year in suit should be imposed as they would be if the petitioner were not the corporation's controlling stockholder.

Decision affirmed.