C. D. AND SARAH FOUNTAIN, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Dockets Nos. 4967–70, 4968–70, 4971–70. Filed February 22, 1973.

---

[1] Cases of the following petitioners are consolidated herewith: Craft Plating and Finishing, Inc., docket No. 4968–70; Charles E. and Robbie D. Craft, docket No. 4971–70.

*J. Richard Carr,* for the petitioners.
*Robert G. Faircloth,* for the respondent.

GOFFE, *Judge:* Respondent determined deficiencies in Federal income tax and addition to tax of the petitioners as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 4967-70 | C. D. and Sarah Fountain | 1967 | [1] $11,312.72 |
| 4968-70 | Craft Plating & Finishing, Inc. | [2] 1968 | 17,073.77 |
| 4971-70 | Charles E. and Robbie D. Craft | 1967 | 13,619.25 |

[1] Respondent also determined an addition to tax under the provisions of sec. 6651(a), I.R.C. 1954, in the amount of $565.64.
[2] The taxable year of petitioner in docket No. 4968-70 is a fiscal year ending July 31, 1968.

Upon joint motion by the parties, these cases were consolidated for trial, briefs, and opinion. The addition to tax in docket No. 4967–70 was not assigned as error by petitioners and was, therefore, conceded. Other adjustments contained in the statutory notices of deficiency were not assigned as error and other adjustments assigned as error have been settled by the parties. The issues for decision are:

(1) Whether receipt of checks of Craft Plating & Finishing, Inc., by its shareholders, C. D. Fountain and Charles E. Craft, in the respective amounts of $18,910.25 and $32,198.54 within 2½ months after the close of the corporation's taxable year in which it was an electing small business corporation (taxable year ended July 31, 1967), constitutes "money" under the provisions of section 1375(f) of the Code, and if not, whether they represent dividend income because at the time of receipt (within taxable year ended July 31, 1968) the corporation was not an electing small business corporation;

(2) Whether Craft Plating & Finishing, Inc., for its taxable year ended July 31, 1968, is entitled to deduct the sum of $20,100 representing a bonus to its president-shareholder, Charles E. Craft, who owned 63 percent of the stock of the corporation or whether such deduction is prohibited by section 267(a)(2) of the Code;

(3) Whether Craft Plating & Finishing, Inc., is entitled to deduct $6,373.47 for its taxable year ended July 31, 1967, as a reserve for bad debts under section 166 or, in the alternative, as partially worthless debts; and

(4) Whether Charles E. Craft is entitled to deduct as employee business expenses in the amount of $1,498 for the taxable year 1967 the expenses attributable to the use of his personal automobile as an outside salesman for Craft Plating & Finishing, Inc., and other corporations.

#### GENERAL FINDINGS OF FACT

All the facts and exhibits stipulated by the parties are incorporated in our findings of fact.

Petitioner Craft Plating & Finishing, Inc. (Craft Plating), was incorporated on August 1, 1963. Its principal place of business is located near Attalla, Ala., and its principal business activity is that of metal plating of all types. It maintained its books and records and filed its income tax returns on the accrual method of accounting on taxable years ending on July 31. It filed both of its Federal income tax returns, Form 1120–S for the taxable year ended July 31, 1967, and Form 1120 for the taxable year ended July 31, 1968, with the director, Internal Revenue Service Center, Chamblee, Ga.

Petitioners C. D. and Sarah Fountain (Fountain) are husband and wife and reside at Attalla, Ala. They filed a joint Federal income tax return for the taxable year 1967 with the director, Internal Revenue Service Center, Chamblee, Ga.

Petitioners Charles E. and Robbie D. Craft (Craft) are husband and wife and reside at Attalla, Ala. They filed a joint Federal income tax return for the taxable year 1967 with the director, Internal Revenue Service Center, Chamblee, Ga.

## 1. *Corporate Distributions*

### FINDINGS OF FACT

Craft and Fountain were the sole shareholders of Craft Plating, owning respectively 63 percent and 37 percent of the issued and outstanding shares of stock. Craft Plating elected to be treated, for Federal income tax purposes, as a "small business corporation" pursuant to sections 1371 *et seq.* (subch. S), I.R.C. 1954. Such election remained in force throughout its taxable year ended July 31, 1967, but was voluntarily terminated and was not in force for its taxable year ended July 31, 1968, or thereafter.

For the taxable year ended July 31, 1967, Craft Plating earned undistributed taxable income of $51,108.79 which it reported on its U.S. small business corporation income tax return (Form 1120-S) and allocated that sum of ordinary income to Fountain and Craft in the respective amounts of $18,910.25 and $32,198.54 which was in the ratio of their stock ownership in Craft Plating.

On October 14, 1967, petitioners' accountant prepared counter checks payable to Fountain and Craft in the amounts allocated to them as their respective shares of the undistributed income of Craft Plating. At the time he prepared the checks he did not ascertain whether Craft Plating had sufficient funds in its bank account to honor the checks.

The accountant delivered the checks to Craft for signature and advised him to see that he (Craft) and Fountain cashed the checks promptly in order that the funds represented by the checks would be reflected in the bank accounts of the individuals. At the time the checks were delivered, no entry was made in the Craft Plating check register to reflect the checks and the balance in the corporate checking account was insufficient to pay the checks.

At the close of the taxable year of Craft Plating on July 31, 1968, the two counter checks were discovered by the accountant in the safe of Craft Plating uncashed and he caused to be prepared an adjusting journal entry for the books of Craft Plating as follows:

| | | |
|---|---|---|
| Shareholder's undistributed income | $51,108.79 | |
| Notes payable—Charles Craft | | $32,198.54 |
| Notes payable—C. D. Fountain | | 18,910.25 |

To remove from shareholders undistributed income, tax option corporation earnings and to record the withdrawal and loan of this sum by Mr. Craft and Mr. Fountain to Craft Plating and Finishing, Inc.

The posting of this entry on the books and records of Craft Plating was the first entry made on the books to reflect the counter checks.

At some time after the close of the taxable year of Craft Plating on July 31, 1969, Fountain and Craft endorsed the checks to Craft Plating

as loans to the corporation, and they were paid by the bank on October 14, 1969.

Craft and Fountain reported on their income tax returns for the taxable year 1967 (the taxable year within which the corporate taxable year ending July 31, 1967, ended), as income from small business corporations the identical amounts shown as allocated to them on the corporate return; i.e., $18,910.25 to Fountain and $32,198.54 to Craft.

The Commissioner, in his statutory notices of deficiency to Craft and Fountain, determined the following:

It is determined that your share of undistributed taxable income of Craft Plating and Finishing, Inc., a small business corporation for its taxable year ended July 31, 1967, was not distributed in money within a two and one-half month period after the close of its taxable year. It is also determined that the credit by the corporation to its notes payable in the amount of $18,910.25 [this amount for Fountain and $32,198.54 for Craft] (your reported share of undistributed taxable income) does not constitute a distribution in money. It is further determined that the amount of $18,910.25 [this amount for Fountain and $32,198.54 for Craft] was distributed to you subsequent to two and one-half months after the close of the taxable year ended July 31, 1967, and therefore constitutes dividend income to you for your taxable year ended December 31, 1967.

### OPINION

In order to appreciate the implications of this issue it is necessary to elaborate on the taxability or nontaxability to the shareholders of the distributed and undistributed taxable income of a corporation which has elected to be taxed under the provisions of subchapter S.

The shareholders of a corporation which has elected to be taxed under the provisions of subchapter S are taxable on distributions of dividends received during the taxable year. Sec. 316(a), I.R.C.; sec. 1.1372–1(c)(2) and (7), Income Tax Regs.; *DeTreville* v. *United States*, 445 F. 2d 1306 (C.A. 4, 1971).

In addition, the shareholders of a subchapter S corporation are taxable on undistributed taxable income which is, in the most simple terms, the taxable income of the corporation minus the taxable distributions.

In 1966 Congress recognized that a subchapter S corporation could not always distribute its entire taxable income by the close of the taxable year because the corporation could not ascertain the amount of its taxable income until after the close of the taxable year.[2] Accordingly, Congress added section 1375(f) to provide that a distribution of money within 2½ months after the close of the taxable year shall be treated as

---

[2] H. Rept. No. 1238, 89th Cong., 2d Sess., pp. 3–5 (1966) ; S. Rept. No. 1007, 89th Cong., 2d Sess., pp. 3–5 (1966).

a distribution of the corporation's undistributed taxable income for such taxable year.[3]

Applying the foregoing principles to the facts in this case we observe the following results. Craft Plating made no distributions of cash or other property during its taxable year ended July 31, 1967, so its shareholders are taxable on its entire taxable income. Craft Plating and its shareholders decided to invoke the provisions of section 1375(f) and distribute the taxable income within the 2½-month period following the close of Craft Plating's taxable year ended July 31, 1967. That period expired on October 15, 1967; therefore, the corporation's accountant prepared counter checks from the corporation to the shareholders for their correct respective shares of the total undistributed taxable income. If the shareholders had promptly cashed the checks they would have been taxed in their taxable year 1967 only on the taxable income of the corporation for its taxable year ended July 31, 1967. This the shareholders failed to do, despite the advice of their accountant. Instead, the checks were not cashed until October 14, 1969. In addition, the corporation voluntarily terminated its election under subchapter S on July 31, 1967, so that thereafter the corporation was taxable on its income and the shareholders were taxable only on distributions of money or property from the corporation.

At the end of its taxable year July 31, 1968, the accountant discovered the uncashed checks in the safe of the corporation and prepared an adjusting journal entry for the corporate books to record the checks as notes payable to the shareholders from the corporation because the checks had not been previously recorded.

The respondent determined, in his statutory notices of deficiency, that when the checks were issued on October 14, 1967, they were, at that time, promissory notes of the corporation rather than money and they were, therefore, distributions of property by the corporation to its shareholders and taxable as dividends. In other words, he determined that the corporation failed to distribute its taxable income

[3] SEC. 1375. SPECIAL RULES APPLICABLE TO DISTRIBUTIONS OF ELECTING SMALL BUSINESS CORPORATIONS.

(f) DISTRIBUTIONS WITHIN 2½-MONTH PERIOD AFTER CLOSE OF TAXABLE YEAR.—

(1) DISTRIBUTIONS CONSIDERED AS DISTRIBUTIONS OF UNDISTRIBUTED TAXABLE INCOME.—Any distribution of money made by a corporation after the close of a taxable year with respect to which it was an electing small business corporation and on or before the 15th day of the third month following the close of such taxable year to a person who was a shareholder of such corporation at the close of such taxable year shall be treated as a distribution of the corporation's undistributed taxable income for such year, to the extent such distribution (when added to the sum of all prior distributions of money made to such person by such corporation following the close of such year) does not exceed such person's share of the corporation's undistributed taxable income for such year. Any distribution so treated shall, for purposes of this chapter, be considered a distribution which is not a dividend, and the earnings and profits of the corporation shall not be reduced by reason of such distribution.

for the taxable year ended July 31, 1967, within 2½ months and its shareholders were taxable on its entire undistributed taxable income because the checks did not constitute money as required by section 1375(f). In addition, because the checks were distributed on October 14, 1967, and Craft Plating was not an electing small business corporation, the checks represented dividend income on that date. The result to the shareholders would be to tax them in their taxable year 1967 on the $51,108.79 as undistributed taxable income of the subchapter S corporation for the taxable year ended July 31, 1967, and again tax them on $51,108.79 in the same taxable year 1967 as a dividend from the corporation during its taxable year ended July 31, 1968, if the corporation had current and accumulated earnings and profits to that extent.

As unjust as that result may first appear, we are compelled to sustain the determination of the Commissioner.

Petitioners argue first that the checks were money and thus satisfied the provisions of section 1375(f).

We find that the parties did not treat the checks as money as that term is commonly used because they held them for 2 years without cashing them; because there were not sufficient funds in the bank account to honor the checks when they were written; and because the checks were never recorded as cash disbursements on the books and records of the corporation, but instead were recorded as notes payable. In so holding we do not imply that checks written on the corporation bank account cannot satisfy the requirements of section 1375(f). We recognize the universal business custom of paying by check. If Craft Plating and its shareholders had treated the checks as cash and negotiated them in a reasonable time we would be inclined to hold that the October 14, 1967, distribution satisfied the requirements of section 1375(f).

We conclude that the checks represented demand obligations of the corporation and we have previously held that distributions of obligations of the corporation to its shareholders do not qualify as distributions of money under the provisions of section 1375(f). *Randall N. Clark*, 58 T.C. 94 (1972).

Petitioners here argue that the regulations relating to section 1375(f) are invalid. Section 1.1375–6(a)(2)(iii), Income Tax Regs., provides as follows:

a distribution of money does not include *a distribution of an obligation of the corporation*, a distribution of property other than money in satisfaction of a dividend declared in money, or a distribution in exchange for stock. [Emphasis added.]

We held the regulations to be valid in *Randall N. Clark, supra*, and petitioners have shown us nothing to cast doubt on the correctness

of our prior holding. Petitioners argue that the regulations quoted above should not be binding upon them because they were not adopted until June 24, 1968. We fail to see how this argument helps petitioners. The regulations merely interpret the term "money" in the same manner they interpreted it when Craft Plating issued the checks. The problem is not one of lack of definitive regulations but instead a failure to follow the advice of petitioners' accountant who correctly interpreted the Code provision.

Petitioners contend that if the distribution does not qualify under section 1375(f) then no distribution was actually made. This argument ignores the subsequent treatment of the checks by the parties; i.e., entering them on the books as corporate obligations and endorsing them back as loans to the corporation.

Having found that the checks represented demand obligations of Craft Plating, it is clear that they represented property. Sec. 317(a), I.R.C.; sec. 1.317–1, Income Tax Regs. The issuance of the checks on October 14, 1967, therefore, constitutes a dividend. Sec. 301(a), I.R.C. Petitioners offered no proof to show that the fair market value of the checks was less than their face amounts, which the Commissioner determined. Accordingly, the fair market value of the checks is found to be equal to their face amounts.

The checks are dividends to Craft and Fountain on October 14, 1967, to the extent of the current and accumulated earnings and profits of Craft Plating at the close of its taxable year ended July 31, 1968. Sec. 316(a), I.R.C.; sec. 1.316–1 et seq., Income Tax Regs.

Petitioners contend that the extent to which the issuance of the checks should be taxed as dividends is limited to the earnings and profits accumulated on July 31, 1966 (the end of the taxable year prior to the taxable year governed by subchapter S), and rely on George A. Roesel, 56 T.C. 14 (1971). That case is distinguishable.

The distributions in question in that case were made on the last day of the taxable year and, therefore, the earnings and profits of that year controlled the extent to which the dividends were taxable. In the present case the distributions (issuance of checks) were made on October 14, 1967, not within the taxable year ended July 31, 1967, but within the taxable year ended July 31, 1968; therefore, the extent of the current and accumulated earnings and profits of Craft Plating on July 31, 1968, governs the taxability of the dividends. Sec. 316(a), I.R.C.; sec. 1.316–1, Income Tax Regs.

The amount of current and accumulated earnings and profits at the end of the taxable year on July 31, 1968, cannot be determined without a computation under Rule 50; accordingly, the amount of the dividend will be likewise determined under Rule 50.

## 2. *Deduction for Bonus*

### FINDINGS OF FACT

The board of directors of Craft Plating, on July 24, 1968, authorized a bonus payable to Charles E. Craft in the amount of $20,100 which is reflected in the minutes of the meeting. Craft owned 63 percent of the issued and outstanding stock of Craft Plating. Craft reported the bonus as compensation on the Federal income tax return he filed jointly with his wife for the taxable year 1968. Their return was filed on the cash basis of accounting and the return of Craft Plating for the taxable year ended July 31, 1968, was filed on the accrual method of accounting.

The books and records of Craft Plating on July 31, 1968, reflected the unpaid bonus of $20,100 as part of a credit balance of $30,000 in an account entitled "accrued bonus." The remaining $9,900 included in the balance represented a bonus payable to Fountain authorized at the same time as Craft's

At the time the board of directors of Craft Plating authorized the bonus as payable to Craft and Fountain, Charles E. Craft had the authority to sign checks on behalf of the corporation.

Some time after January 1969, Craft Plating transferred the balance in the accrued bonus account to individual drawing accounts for Craft and Fountain.

Craft Plating deducted the $20,100 bonus to Craft on its Federal income tax return for the taxable year ended July 31, 1968.

The Commissioner, in his statutory notice of deficiency to Craft Plating, disallowed the deduction of $20,100 with the following explanation:

(b) Since the amount of $20,100.00 accrued on your books as salary to Mr. Charles Craft, your principal stockholder, was not paid by you or constructively received by Mr. Craft within two and one-half months after the close of the taxable year, it is determined that the amount of $20,100.00 for salary is not an allowable deduction under the provisions of Code section 267.

### OPINION

Section 267 provides for disallowance of business expenses with respect to transactions between related taxpayers. There is no dispute here as to the relationship of the taxpayers, the methods of accounting employed by Craft and Craft Plating, or nonpayment of the bonus by Craft Plating within 2½ months of the close of its taxable year; the narrow question presented is whether Craft constructively received the bonus of $20,100 within 2½ months after the close of the corporation's taxable year.[4] Sec. 1.267(a)–1(b)(iii), Income Tax Regs.

---

[4] This is the issue as framed by the parties. We are, therefore, not concerned with the application of our opinion in *Michael Flynn Manufacturing Co.*, 3 T.C. 932 (1944).

"Constructive receipt of income by a taxpayer on the cash receipts basis is a creature of the Regulations; they prescribe the conditions which make the doctrine applicable." *Hyland* v. *Commissioner*, 175 F. 2d 422, 423 (C.A. 2, 1949). The conditions are contained in section 1.451-2(a), Income Tax Regs., and are as follows:

Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *

The application of the doctrine depends upon the facts and circumstances of each case. *R. E. Hughes, Jr.*, 42 T.C. 1005 (1964).

The fact that the individual cash basis taxpayer reported the item as gross income is not determinative of the question of constructive receipt. *Anthony P. Miller, Inc.*, 7 T.C. 729 (1946), reversed on other grounds 164 F. 2d 268 (C.A. 3, 1947), certiorari denied 333 U.S. 861 (1948).

Respondent relies primarily upon *Hyland* v. *Commissioner, supra,* and petitioners rely primarily upon *Hyplains Dressed Beef, Inc.*, 56 T.C. 119 (1971).

We conclude that the facts in the instant case are more analogous to those in *Hyplains* than to those in *Hyland* and hold that Craft did constructively receive the bonus of $20,100 in 1968 and Craft Plating is not prohibited from claiming the deduction therefor on its return for the taxable year ended July 31, 1968.

*Hyland* v. *Commissioner, supra,* is distinguishable because, although the individual was shown to have the power to withdraw the funds from the corporation, there was no showing that he had the authority to do so. Moreover, there was no showing that Hyland had been advised of the action by the board of directors authorizing the bonus and there was some doubt as to whether the bonus was solely for prior services rendered because it related to efforts on a contract that was not yet completed. In the instant case Craft not only knew about the bonus, he and Fountain were the sole directors who approved the bonus and Craft was president of the corporation. Although there was no direct proof that Craft could sign checks on behalf of Craft Plating on July 24, 1968, we received into evidence two checks that he signed sometime between October 14, 1967, and October 14, 1969 (these relate to issue 1 above). The First National Bank of Attalla cashed these checks on October 14, 1969, thereby honoring Craft's signature. The president of a closely held corporation customarily would have the authority to sign checks. We feel, therefore, that there is sufficient evidence to show that Craft had the authority to sign checks when

the bonus was authorized by the board of directors on July 24, 1968.

The bonus was specified as to amount by the board of directors; there were only two bonuses authorized and they were set aside in an account on July 31, 1968, the end of the corporation's taxable year; and early in 1969 they were credited to the drawing accounts of the individuals. There is no evidence of any restrictions on drawing the money out of the corporation by Craft. For these reasons we decide this issue in favor of petitioner. *Hyplains Dressed Beef, Inc., supra.*

### 3. *Deduction for Bad Debts*

#### FINDINGS OF FACT

Craft Plating claimed a deduction for bad debts in the amount of $6,373.47 on its U. S. small business corporation income tax return (Form 1120-S) for the taxable year ended July 31, 1967. The deduction was based upon Craft Plating's doubt as to collectibility of the following accounts receivable:

| Account receivable | Amount deducted | Percentages of balance outstanding |
|---|---|---|
| Atlas Mfg. & Machine, Inc | $1, 475. 15 | 25 |
| I.D. Precision | 2, 923. 62 | 25 |
| General Time Corp | 1, 974. 70 | 20 |
| Total | 6, 373. 47 | |

The deduction claimed was designed to create a reserve for bad debts. Craft Plating did not obtain prior permission of the Commissioner to employ the reserve method of charging off bad debts.

Craft Plating, prior to the taxable year ended July 31, 1968, suffered losses from uncollectible accounts receivable.

The accounts receivable comprising the bad debt deduction were not partially worthless on July 31, 1967.

#### OPINION

Craft Plating claimed the deduction for bad debts under the reserve method but at trial also contended, in the alternative, that the deduction should be allowed as a chargeoff of partially worthless accounts receivable.

A taxpayer may adopt the reserve method for deducting bad debts by obtaining approval from the Commissioner of Internal Revenue unless the taxpayer has not, in prior taxable years, been entitled to a bad debt deduction. Sec. 166(c), I.R.C.; sec. 1.166-1(b), Income Tax Regs. Craft Plating did not obtain permission from the Commissioner; therefore, it had the burden of establishing that it was not

entitled to deductions for bad debts in prior taxable years. Sec. 1.166–1 (b), Income Tax Regs. See *Streight Radio & Television, Inc.*, 33 T.C. 127 (1959), affd. 280 F. 2d 883 (C.A. 7, 1960), certiorari denied 366 U.S. 965 (1961) ; Rev. Rul. 69–548, 1969–2 C.B. 32.

Craft Plating failed to prove it was not entitled to a bad debt deduction in prior years. Quite the contrary, the president of Craft Plating, Charles E. Craft, testified that in prior years Craft Plating recovered less than one-third of a receivable from Elgin National Watch on which Craft Plating filed suit. Craft Plating has failed to prove that it was not entitled to bad debt deductions in taxable years prior to the taxable year ended July 31, 1967, and, therefore, is not entitled to deduct $6,373.47 under the reserve for bad debts method. *Streight Radio & Television, Inc., supra.;* Rev. Rul. 69–548, 1969–2 C.B. 32.

Craft Plating likewise bears the burden of proving that it is entitled to the deduction for bad debts under its alternative theory; i.e, that the three accounts receivable enumerated above were partially worthless. *Publishers New Press, Inc.*, 42 T.C. 396 (1964).

Craft Plating offered no evidence as to what identifiable events occurred during its taxable year ended July 31, 1967, which indicated the partial worthlessness of the three accounts receivable. The testimony of Charles E. Craft, president of Craft Plating, was vague and indefinite as to the portions of the three acounts receivable which were not recovered. The testimony of the accountant for Craft Plating was likewise indefinite. We hold, therefore, that Craft Plating has not sustained its burden of proving that the three accounts receivable were partially worthless on July 31, 1967. *Publishers New Press, Inc., supra.*

### 4. *Expenses of Charles E. Craft as an Outside Salesman*

#### FINDINGS OF FACT

The Commissioner, in his statutory notice of deficiency addressed to Charles E. and Robbie D. Craft, disallowed a deduction claimed by them on their return for the taxable year 1967 in the amount of $1,498 as employee business expense (automobile expense) on the grounds that such expense constituted an expense of the corporations of which Charles E .Craft was a principal stockholder and was not an expense of Charles E. Craft.

#### OPINION

This issue is not one of substantiation as argued by respondent in his brief. The deduction was not disallowed for failure to substantiate.

The deduction was disallowed because the respondent determined the expenses to be those of corporations of which petitioner Charles E. Craft was a majority shareholder. Petitioner Charles E. Craft admitted in his testimony that the expenses were incurred in traveling for the corporations and we believe his testimony. That alone does not entitle him to the deduction, however; he must show that the expenses incurred were a condition to his employment and that he could not be reimbursed. *Heidt* v. *Commissioner*, 274 F. 2d 25 (C.A. 7, 1959), affirming a Memorandum Opinion of this Court. Petitioner Charles E. Craft offered no such proof. Respondent is, accordingly, sustained in his determination that the deduction be disallowed.

Because of concessions of the parties and our holdings on the issues presented,

*Decisions will be entered under Rule 50.*