LOMBARD & CO., A CALIFORNIA CORPORATION, SUCCESSOR IN INTEREST TO SIERRA VIEW FUNERAL CHAPEL, INC., Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lombard & Co. v. Commissioner
Docket No. 5243-76.
United States Tax Court
T.C. Memo 1979-297; 1979 Tax Ct. Memo LEXIS 226; 38 T.C.M. (CCH) 1158; T.C.M. (RIA) 79297; August 7, 1979, Filed; As Amended *226 The controlling shareholder of a corporation had an informal oral agreement with the corporation to receive a bonus and monthly salary. Held, the amount of bonus was not definitely ascertained so there was no constructive receipt. Held,further, in the absence of any written memoranda, corporate minutes, resolutions, or a crediting upon the corporation's books of the amount of salary, the salary was not constructively received. Belan Kirk Wagner, for the petitioner. Lawrence G. Becker, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioner's Federal income tax for the fiscal year ended October 31, 1972 of $4,821 and for the fiscal year ended December 31, 1972 of $1,221 and a penalty pursuant to section 6651(a) [1] of $808 for the fiscal year ended December 31, 1972. Due to the concessions the only issue presented for our consideration is whether a deduction is disallowed under section 267 for salary and bonuses accrued by petitioner's predecessor corporation (in the amount *227 of $7,395) but not paid to its 80 percent shareholder until more than 2-1/2 months after the end of its October 31, 1972 fiscal year. Resolution of this issue depends upon whether the salary and bonuses were constructively paid within 2-1/2 months after the close of petitioner's predecessor corporation's fiscal year ended October 31, 1972. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner, Lombard & Co., is a California corporation in the mortuary business, duly organized under the laws of the State of California on or about June 17, 1959. Petitioner's principal place of business at the time it filed its petition herein and during the years in issue was Sacramento, California. Petitioner filed its corporate income tax return using the accrual method of accounting.
Franklin Lombard owned, at all times here relevant, 80 percent of petitioner's outstanding stock and has been its president and a director. The remaining 20 percent of petitioner's outstanding stock was owned by Franklin's mother. Franklin reported his income using the cash basis method *228 of accounting. On or about November 30, 1971, petitioner purchased all the stock in Sierra View Funeral Chapel, Inc. (hereafter Sierra), a California corporation operating a mortuary with its principal place of business in Carmichael, California. At all relevant times, Sierra used the accrual method of accounting. Franklin was the controlling officer and a director of Sierra. He also had authority to write checks and otherwise draw from all corporate bank accounts without additional approval. Sierra did not maintain a formal set of books or records but rather supplied its accountant, Richard Copeland, with check stubs, receipt books, records of funerals, invoices, and other "raw data" from which the accountant prepared work papers to be used as its permanent records.
On or about December 28, 1972, Lombard & Co. decided to dissolve and liquidate Sierra, pursuant to section 4124 of the California Corporations Code, and assume all of its obligations. Three days later, Sierra was liquidated and Lombard & Co. received all of its assets and assumed all of its obligations in a liquidation qualifying under sections 332 and 334(b)(2). Several days prior to January 15, 1973, Copeland's *229 assistant prepared a worksheet in order to estimate Sierra's tax liability for its October 31, 1972 fiscal year. The worksheet showed estimated net income before bonuses of $22,868. It also showed a "bonus at 25%" as $5,717, representing 25 percent of Sierra's net income before bonuses. The worksheet, therefore, showed net income of $17,151 and estimated Federal taxes due of $4,000. Although the bonus was not specifically shown as due Franklin on the worksheet, it is clear that the bonus represented the bonus due him. The amount of bonus was determined pursuant to an informal understanding whereby Sierra was to pay Franklin one-third of its net profits, although this was not memorialized in the corporate minutes or any other documents. This arrangement was similar to one Franklin had with Lombard & Co. and which had been instituted at Lombard & Co's inception. At the time Lombard & Co. purchased Sierra, Franklin intended to institute the arrangement at Sierra. Franklin was also to receive a regular salary of $500 per month. Copeland reviewed the worksheet and crossed out the 25 percent and placed next to the bonus a "1/3" but did not increase the amount reflected as due. There *230 is also shown on the worksheet a computation "salary (accrued) 6,000 -- 3,845 = 8,155" (sic) which established Sierra's obligations to Franklin. The $3,845 represented the amounts actually paid Franklin by Sierra during its fiscal year. Copeland called Franklin prior to January 15 and told him the details of the computation and how much taxes were owed. On January 15, 1973, Sierra filed a Form 7004, Application for Automatic Extension of Time to File Corporation Income Tax Return. Accompanying the application was a check for $2,000 representing the accountant's estimate of one-half the balance of taxes due as established from the worksheet. Enclosed with a letter dated January 22, 1973, Copeland sent Sierra its final financial statements for its October 31, 1972 fiscal year. The statements included a Comparative Statement of Condition which showed an "Accrued/Salary and Bonuses Payable" of $7,395 due Franklin. It also showed earnings subject to bonuses of $15,719 and accrued bonuses of $5,240. The report was prepared sometime prior to January 22 and the letter was dated only after all the enclosed reports had been completed. Copeland also prepared a "working trial balance" for *231 Sierra for its fiscal year ending October 31, 1972. In its "Due to Stockholders" account, the balance sheet shows only the $2,155 salary accrued but not paid Franklin. The reciprocal debit to this credit is an adjusting entry to the "salaries" account of $2,155. There was no balance in the "Accrued Bonuses" account but this was due to Copeland's practice of not crediting this account until the following period's working trial balance was prepared.None-theless, the "working trial balance" shows that Sierra had net income before bonuses of $15,719.26 and bonuses of one-third of $15,719.26, or $5,240, thereby yielding net income of $10,479.26. Although the one to whom the bonus was due was not designated on the sheets, it represented the bonus due Franklin. The "working trial balance" prepared for the period November 1, 1972 through December 31, 1972 (the date of liquidation) indicates among the adjusting entries made on the balance a credit of $5,239.75 to the "Due to Stockholders" account (which on the balance sheet for October 31, 1972 had a balance of $2,155) and a reciprocal debit to "Retained Earnings" in the same amount. This $7,394.75 in the "Due to Stockholders" account *232 ($5,239.75 plus $2,155) was then debited to the same account and credited (along with $612.44, representing a debit to payroll taxes) to an account titled "Due Lombard and Co." For its fiscal year ending October 31, 1972, Sierra accrued and deducted on its return filed April 13, 1973 compensation to Franklin in the amount of $11,240. Of this, $6,000 was Franklin's salary and the remaining $5,240 was the bonus to Franklin calculated to be one-third of Sierra's net profit. Only $3,845 was paid during Sierra's fiscal year, however, and the remaining $7,395 was not actually paid until sometime after January 15, 1973. This $7,395 consisted of $5,240 accrued and unpaid bonus and $2,155 accrued and unpaid salary. As of June 30, 1973, Lombard & Co. credited an account on its books titled "Due Stockholder-Franklin H. Lombard" with an amount including the $7,395 in issue "To Record Intercompany Transactions on Sierra View Funeral Chapel Books Subsequent to 12/31/72." As of October 31, 1972, Sierra had cash of $17,175 and total current assets of $36,353. If the $7,395 in issue is included as a liability, Sierra's current liabilities at that date were $38,152. Based upon Sierra's working *233 trial balance prepared for December 31, 1972, Sierra had cash of $13,245.73, current assets of $41,295.12 and current liabilities of $10,736.06. Franklin and his wife, cash basis taxpayers, reported the unpaid $7,395 on their joint tax return for calendar year 1973. Sierra deducted the $7,395 as compensation accrued or paid to Franklin during its fiscal year ending October 31, 1972. Respondent determined that the $7,395 was not constructively received by Franklin on or prior to January 15, 1973, and disallowed the deduction under section 267. OPINION Both parties agree that if Franklin did not constructively receive his bonus and salary on or before January 15, 1973, the deduction by Sierra of these amounts would be disallowed under section 267. [2] *234 Respondent first contends that the amounts of salary and bonus deducted by Sierra were not ascertained before January 15, 1973, so that there could not be any constructive receipt prior to that time. In the event that we find that the amount was ascertained, respondent maintains, nonetheless, that the salary and bonus were not constructively received prior to January 15 because the funds were not available for payment to Franklin. We agree with respondent that, in general, where the amount of compensation to be received *235 cannot be definitely ascertained because it is based on a percentage of profits, there can be no constructive receipt until the profits are known. This is so because the recipient is "not in a position where [he] could demand and cause to be paid the full percentage amounts at [his] pleasure * * *." Wehner v. Commissioner,21 B.T.A. 614, 616 (1930). We must now determine whether the amounts of salary and bonus were definitely ascertained on or prior to January 15, 1973. Respondent relies mainly on the Form 7004 and the worksheet used to prepare the Form to show that there was no informal understanding between Sierra and Franklin as to the amount of salary or bonus on or before January 15, 1973, and, assuming there was an understanding, that there was no final computation of Sierra's profits at or prior to January 15 which would have enabled Sierra to have accrued the proper amount of bonus. We found in our findings of fact that there was such an informal understanding as to the amount of bonus; the fact that Copeland's assistant placed a 25 percent figure next to the bonus due Franklin on the worksheet is not persuasive that the percentage was not fixed at that time in view of Copeland's *236 crossing out the "25%" and placing next to the bonus a "1/3". Franklin was in control of Sierra and at the time it was purchased by Lombard & Co., Franklin intended to institute the arrangement there. This does not mean, however, that the amount of bonus was definitely determined as of January 15. It is clear that the worksheet from which the Form 7004 was prepared did not accurately reflect the amount of bonus since it was based only on a rough (and inaccurate) estimate of Sierra's net income. There is no doubt that the amount of bonus was ascertained by January 22, 1973. Enclosed with a letter of that date was Sierra's final financial statements which showed a bonus due Franklin of $5,240. It is petitioner's contention that these financial statements were prepared from the "working trial balance" for the year ending October 31, 1972, which indicated that there was a bonus due of $5,240, and that the "working trial balance" must have been prepared prior to January 15 because of the time required to prepare the final financial statements from it. Unfortunately, the "working trial balance" is undated and we must, therefore, determine when it was finished based only upon inference. *237 Respondent argues that if more accurate information was available to determine the estimated tax required to be paid with the filing of the Form 7004, Sierra would have used it. This is particularly true since Sierra's profit as determined by the "working trial balance" was lower than that as determined by the worksheet (so that less tax would have had to have been paid at the time). On balance, we cannot reasonably determine when the "working trial balance" was prepared. We note, moreover, that some of the accounts listed (by number) on the worksheet differ from the amounts listed by the corresponding numbered account on the "working trial balance." We assume that if the latter had been prepared prior to January 15, the same amounts would have been listed on both. Since the burden of proof is on petitioner, we agree with respondent that the amount of bonus was not definitely ascertained on or prior to January 15, 1973. Petitioner, in the alternative, contends that if we do not find that Sierra accrued the $5,240 bonus prior to January 15, 1973, then a $5,717 bonus was set aside for Franklin by virtue of the worksheet from which the Form 7004 was prepared. Petitioner states *238 that even if it was determined Franklin was overpaid, he would simply have had to set off the excess against his future salary. Cf. Hill v. Commissioner,3 B.T.A. 761 (1926). We do not believe Franklin had the authority to withdraw the $5,717 based upon the worksheet. The amount was admittedly an estimate and there is nothing in the record, either by way of testimony, book entry, or by corporate minute or resolution, [3] that provides us with an inference that the worksheet showed either "an intent to so earmark the sums in question," Fetzer Refrigerator Co. v. United States,437 F.2d 577 (6th Cir. 1971) or that Franklin had the authority to withdraw estimates of his bonus before its final determination. Cf. Cooney v. Commissioner,18 T.C. 883 (1952). We believe that the amount of salary was fixed by the time the worksheet was prepared, however, and there is little doubt that the salary was determined at the time Sierra was purchased. Respondent argues that since the worksheet showed "salary (accrued) 6,000 - 3,845 = 8,155" the amount of salary must have been indeterminate. We do not credit this entry with much weight. *239 The $3,845 represented the amount actually paid Franklin during the year and the $6,000 was Franklin's salary at $500 per month. [4] Subtracting $3,845 from $6,000 yields $2,155, the amount of accrued but unpaid salary. For some unexplained reason, it appears that the $6,000 was added back to the $2,155 to determine the amount of salary as $8,155 due Franklin for estimated tax purposes. Having found that the amount of salary due Franklin was ascertained prior to January 15, we must now determine whether the accrued but unpaid $2,155 salary due Franklin was constructively received on or before January 15. Section 1.451-2(a), Income Tax Regs., provides: Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, *240 set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. Respondent's main contention in this regard is that the funds were not available for payment to Franklin because to do so would impair Sierra's ability to carry on its business, citing Johnson v. Commissioner,25 T.C. 499 (1955). Petitioner contends that Sierra could have paid Franklin its salary. We do not believe Johnson stands for the broad proposition for which respondent cites it. The taxpayer there had an agreement that his salary checks would not be cashed until the corporation's president decided the financial position of the corporation would permit payment. Similarly, in Gullett v. Commissioner,31 B.T.A. 1067 (1935), the taxpayers' right to receive their salaries was restricted by the directors of the company until they decided the company's finances improved. Nor is this situation like H&H Drilling Co. v. Commissioner,15 T.C. 961 (1950), *241 wherein the corporation did not have sufficient funds in its bank account to pay the salary check. Also, to the same effect is Jerome Castree Interiors, Inc. v. Commissioner,64 T.C. 564, 570 (1975), affd. 539 F.2d 714 (7th Cir. 1976), where the board of directors adopted a resolution that the bonuses were not to be paid if to do so would impair the company's financial condition. See also Lacy Contracting Co. v. Commissioner,56 T.C. 464 (1971); Young Door Co. Eastern Division v. Commissioner,40 T.C. 890 (1963). Since there was no agreement or resolution preventing payment of Franklin's salary until the board of directors approved, it appears that respondent's position is that it would have been unreasonable for Franklin to have caused Sierra to pay his salary and that this is a substantial and effective restriction on Franklin's power to withdraw his salary.
Initially, we do not believe the record provides us with enough information to adequately determine Sierra's working capital needs and whether Sierra would have been financially strapped if payment of the $2,155 was made. In any event, since we find respondent's next argument is persuasive, we do not need to reach the broad *242 result for which respondent argues, although we have some doubts that if Sierra was, in fact, unable to pay Franklin his salary without damaging its financial condition that the money would be available to him. [5] *243 Cf. Basila v. Commissioner,36 T.C. 111, 117 (1961); Ohio Battery & Ignition Co. v. Commissioner,5 T.C. 283 (1945). Respondent argues that even though Franklin had the authority to write checks he did not have the right to do so and, therefore, Franklin never constructively received his salary. This is so because, even though the amount of salary may have been fixed, it was never memorialized by corporate action and set aside to Franklin's account at or prior to January 15, 1973. Petitioner argues that Franklin had the unrestricted power to withdraw the amounts in question and that this suffices for purposes of constructive receipt. It is petitioner's position that it is not necessary for there to be a book entry or resolution to find constructive receipt. [6]
We have long held that the mere power to *244 receive funds is insufficient to justify a finding of constructive receipt. Jerome Castree Interiors, Inc. v. Commissioner,supra;F.D. Bissett & Son, Inc. v. Commissioner,56 T.C. 453 (1971); Basila v. Commissioner,supra, at 117. The corporation must take the necessary action to set the funds apart and the taxpayer must have the unrestricted right to demand payment. We stated in Jerome Castree Interiors, Inc. v. Commissioner,supra at 570, that even in the case of a small, close corporation, the doctrine of constructive receipt is not applicable unless some record is made of the amount due the shareholder. This is so because mere authorization of the amount of salary does not mean the corporation credited the employee's account or set the funds apart so that he could draw on them at any time. Hyland v. Commissioner,175 F.2d 422 (2nd Cir. 1949); Lacy v. Commissioner,supra, at 469. [7]
In Peabody v. Commissioner,5 T.C. 426 (1945), the taxpayer had an agreement as to the amount of his salary but there was no evidence of any action by the board of directors binding the corporation nor were any book entries made until after the *245 close of the taxable year. General funds were available to pay the taxpayer's salary but no funds were labeled as the taxpayer's. We held that the agreement was not "tantamount to crediting or setting apart" the taxpayer's salary. Although in that case the taxpayer had authority to draw checks only in conjunction with one other employee, three of the other authorized employees were his subordinates and we did not discuss this restriction as being a substantial limitation on the taxpayer's authority. We believe the facts in this case are substantially similar [8] *246 and hold that in the absence of substantially similar [8] and hold that in the absence of any written memoranda, corporate minutes, resolution, or a crediting upon the corporation's books of the amount of salary, [9] we cannot say that Franklin's salary was credited or set aside so as to be constructively received. See also Fountain v. Commissioner,59 T.C. 696 (1973); Hyplains Dressed Beef, Inc. v. Commissioner,56 T.C. 119 (1971); F.D. Bissett & Son, Inc. v. Commissioner,supra;Hughes v. Commissioner,42 T.C. 1005 (1964); Geiger & Peters, Inc. v. Commissioner,27 T.C. 911 (1957). Due to concessions, Decision will be entered for the respondent.
Footnotes
1. All statutory references, unless otherwise specified, are to the Internal Revenue Code of 1954, as in effect during the years at issue.↩
2. Section 267 states, in part: (a) Deductions Disallowed--No deduction shall be allowed-- (2) Unpaid Expenses and Interest.--In respect of expenses, otherwise deductible under section 162 or 212, or of interest, otherwise deductible under section 163-- (A) If within the period consisting of the taxable year of the taxpayer and 2-1/2 months after the close thereof (i) such expenses or interest are not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom the payment is to be made, and (B) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (C) If, at the close of the taxable year of the taxpayer or at any time within 2-1/2 months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b).
The only dispute in this case is whether subsection (a)(2)(A)(ii) is met.↩
3. See, for example, Congleton v. Commissioner,T.C. Memo. 1979-130↩.
4. We are aware that since Sierra was not purchased until November 30, 1971, Franklin worked only eleven months during its fiscal year ended October 31, 1972 and was paid for twelve months. The record is silent as to the difference and neither party commented upon it on brief. Accordingly, we treat the extra $500 salary that Franklin was paid as irrelevant to our consideration.↩
5. Petitioner notes on reply brief that Lombard & Co. liquidated Sierra on December 31 and received all of its assets and assumed all of its obligations. Sierra lost its separate corporate existence and Franklin, therefore, would look to Lombard & Co. for payment of Sierra's debt after December 31. It seems clear that Lombard & Co. assumed this liability. Sierra's "Due to Stockholders" account was debited by the $7,394.75 owed to Franklin and credited to an account "Due Lombard & Co." (which, upon liquidation, would be eliminated). Lombard & Co. then credited the $7,394.75 to an account on its book representing amounts owed Franklin. Although no contentions have been made by the parties as to Lombard & Co.'s ability to pay, we believe Lombard & Co. using Sierra's assets could have paid Franklin the $2,155 accrued salary prior to January 15. There is nothing in the record, however, which discloses Franklin's authority to cause Lombard & Co. to pay the accrued debt after its purchase of Sierra or that such amounts were credited on Lombard & Co.'s books prior to January 15.
6. Petitioner relies on three cases to support this contention, Helvering v. Midland Mutual Life Ins. Co.,300 U.S. 216 (1937); Weil v. Commissioner,173 F.2d 805 (2nd Cir. 1949); and F.D. Bissett & Son, Inc. v. Commissioner,56 T.C. 453↩ (1971). We find all of these cases distinguishable.
7. Cf. Congleton v. Commissioner,T.C. Memo. 1979-130↩.
8. To be sure, Peabody was decided under the definition of constructive receipt in sec. 29.42-2, Regs. 111, which is worded differently than it is currently worded in sec. 1.451-2(a), Income Tax Regs.↩ Nonetheless, this difference would not affect the result in the present case. 9. The first indication that funds were credited is the worksheet used to prepare the Form 7004. We do not believe the worksheet, admittedly only estimates, suffices for purposes of being memorialized by corporate action. We are not stating that book entries are a prerequisite to a finding of constructive receipt, however, as the cases cited above demonstrate, but only that some corporate action must have been undertaken.↩